234 N.J. Super. 183 (1989)
560 A.2d 711
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES H. LEONARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 30, 1989.
Decided June 23, 1989.
*184 Before Judges PRESSLER, SCALERA and STERN.
Bruce R. Fadem, attorney for appellant.
Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney for respondent (Lauren A. Metzendorf, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant was convicted in the Municipal Court of Peapack-Gladstone of driving while intoxicated, N.J.S.A. 39:4-50, and was again convicted on trial de novo in the Law Division. He was fined $500.00, surcharged $100.00, required to attend the Intoxicated Driving Resource Center for 48 hours of treatment, and his license was suspended for two years. On this appeal defendant contends, among other things, that "the defendant's retrial was barred by double jeopardy principles" and "the municipal court and Superior Court Law Division committed plain error by declaring [a] mistrial and allowing the second trial to stand." We agree that the second trial was precluded by the mistrial at the first, and reverse the conviction.
*185 The trial commenced in the municipal court on October 6, 1987. On that date the State presented the testimony of its primary witness, Larry Seymour, a former municipal police officer, who had responded to the scene of the accident of May 12, 1986 which resulted in the charges. It appears uncontested that at the conclusion of Seymour's direct and cross-examination the trial was adjourned, with Seymour subject to recall by the State for continued testimony.
Proceedings resumed before the same judge on February 4, 1988,[1] whereupon the court clerk indicated that there had been a malfunction of the taping system on the evening of October 6, 1987, and that substantial portions of Seymour's testimony had not been preserved on tape. Noting that Seymour had not appeared that evening, the court on its own motion declared a mistrial over the objections of defendant's counsel. The judge noted at the outset of the February 8, 1988 proceedings that, because of "the fact four months have passed since that hearing date," the mistrial was required, and thereafter stated:
It's hard to believe, but true. That being the case, I indicated to counsel in chambers that it was my reluctant but it seemed inevitable conclusion that this case should mistry and that would be on the Court's motion. It being obvious that the record is incomplete and that the ... well both parties, the state and the defendant would be prejudiced by an absence of the record ... a complete record, complete and accurate record of what occurred on October sixth. I suppose if Mr. Seymour were here tonight, we could with the consent of the parties retake his testimony and start over again. But it seems to me that the case has to mistry in light of that and I'll ask for comments of [defense counsel] and [the prosecutor] on that.
Defendant objected to the mistrial, stating
Your Honor, I would oppose a mistrial. We're prepared to go ahead, with the exception of the records affecting Mr. Seymour. It would seem to me that if we had a defective tape, the fact the tape is defective may not be germane if the case is successfully concluded on behalf of my client. Because then there is no need for the tape. I don't believe the state has a right to appeal. On the *186 other hand, if the state was successful, I might appeal and I would need that transcript, the Court is correct. I'm not sure how defective that tape is. I'm not sure whether just counsel's arguments are lost or the actual testimony of Mr. Seymour is lost. I would submit to the Court, though, that I have an understanding of the court ruling and that unless the testimony itself is lost, I think it would be improper to declare a mistrial.
Thereafter, the following colloquy occurred:
[PROSECUTOR]: Well Judge, my review was cursory at best, and I was ... as I indicated, I was looking for some specific information which I couldn't find. In looking for that, I noticed that there was some portions of the tape that were missing. What was missing, I don't know. And as I said, it was a cursory review. If [defense counsel] would like to review the tape to see if there is actual testimony missing, that's fine, but in the absence of that, I don't want to go ahead with this case with the hope that no testimony is missing. I think it would be a waste of everyone's time. And I think that if a mistrial is to be declared that either we should listen to the tape and find out if it's necessary or declare a mistrial.
[DEFENSE COUNSEL]: Well Judge, I don't think that I consent to a mistrial in effect and I don't.
THE COURT: I don't think you have to. I think it's up to me.
[DEFENSE COUNSEL]: I know it's up to you, Your Honor. But I think that the Court or the parties either should listen to the tape or have a transcript up here so we could see what's on the tape, and then perhaps the Court will decide whether a mistrial is necessary.
THE COURT: Well as I understand, Madame Clerk, you have listened to the tape.
CLERK: Yes.
THE COURT: And as I understand it there are deletions in the tape and there's a question in your mind as to whether the tape covers the entire proceeding.
CLERK: Well from what I could gather ... (indiscernible  voice low) ...
[DEFENSE COUNSEL]: Well Judge, we have no controversies that S-2 and S-3 are in.
THE COURT: No. That's correct, we don't. But the problem is ... the problem has several aspects to it. And one is just the absence of an accurate record of what transpired. And while you may not object to anything at this point, it may be that there has been items that are deleted from the tape, not included in the tape, that are critical to the defendant. And on the other hand, the state is in a position where . .. where their continued testimony in this case is nothing more than what would be a trial run because if there are ... and I don't think there has to be significant deletions, if there are any deletions from that tape at all, the state will be put to the burden of putting their case on and running through it on a trial run to lose the spontaneity of the order of proofs that they have and their entire position in the case. It's not that you're not entitled to discovery, but it seems to me that it would become nothing more than a complete Article 32 hearing, as we know from the Uniformed Code of *187 Military Justice, it would just be a run through. And the state has indicated that it doesn't want to do that.
[PROSECUTOR]: Well Judge, we're in a no win situation, because if we do win, there's an appeal, and we lose and we're back here anyway. And if we lose, we lose. So the defendant has everything to gain and nothing to lose and we have nothing to gain and everything to lose.
[DEFENSE COUNSEL]: If you lose, there's no need for the transcript ... (indiscernible  voice low) . ..
THE COURT: Well, except that ... except that he .. . that if I now don't declare a mistrial I suppose there is an interlocutory appeal that they could take, they could reserve their right to appeal.
[DEFENSE COUNSEL]: Perhaps.
THE COURT: The state has that right to be protected. Well I've thought about it and discussed it with counsel in chamber ... in chambers and I'm going to declare a mistrial in the matter because of the tape incident and the inability to start over again at this time tonight in the absence of Mr. Seymour.
[DEFENSE COUNSEL]: Your Honor, in regards to Mr. Seymour it's my understanding that he was served with a subpoena for tonight?
THE COURT: Not only was he ... I guess he was served, I have no personal knowledge of that. It's been indicated that he was served, but furthermore as the clerk said earlier, she spoke directly with him and he indicated that he would be here.
A new trial in the matter commenced on April 7, 1988 before a different judge. At that proceeding, defendant moved for dismissal of the charges against him, arguing that his retrial placed him in double jeopardy for the same offense, and also moved to bar the introduction of discovery materials which defendant had received from the State subsequent to the February 4, 1988 proceeding. Both motions were denied, and the new trial commenced that evening. Defendant was ultimately convicted of the drunk driving offense, as well as a violation of N.J.S.A. 39:3-29, which was not appealed.
Defendant argues that the municipal court improperly declared a mistrial at the February 4, 1988 hearing upon discovering that its tape machine had malfunctioned during the October 6, 1987 testimony of Officer Seymour and contends that "there was no sufficient legal reason and a manifest or absolute or overriding necessity for the termination of the trial." By so doing, defendant asserts, the court allowed the State the opportunity to remedy deficiencies in its case, as *188 presented on October 6, 1987, by "introduc[ing] additional evidence and testimony at the second trial pertaining to the state's expert witness, which information had not been provided through discovery prior to the first trial," thus "allow[ing] the state a fresh start at the prosecution of the defendant by overcoming its failure to provide discovery prior to trial." Indeed, defendant argued before the Law Division, and reiterates here, that such discovery material was improperly considered as evidence by the municipal court on retrial.
The Law Division judge rejected defendant's contentions, stating:
I don't see a double jeopardy problem here at all. I'm satisfied that this is a situation within the meaning and intent of N.J.S.A. 2C:1-9(d) which provides in sub paragraph 3 that the Court can terminate a proceeding and reinstitute it later on when the Court finds that termination is required by sufficient legal reason and a manifest or absolute or overriding necessity, and that clearly is the situation here.
The only complaint of the defendant is that he obtained some technical advantage because he thinks that he was not given discovery or full discovery as required, and that because a new trial was set, the State was thereafter allowed and permitted to provide additional discovery. That's not any reason for this Court to determine that the termination of the first trial was improper at all, and indeed as I say, if as so frequently happens in a municipal court where trials are not completed on one evening but are continued on two or three evenings which are frequently separated by periods of several weeks if not several months, and in this case we had a separation of five months, I know of no rule that says the State cannot supplement discovery during that interim period providing notice is given sufficiently in advance of the actual hearing date which is both proper and fair.
There is no requirement that I'm aware of that the State must provide and is bound by the discovery provided to the defendant prior to the first trial date, which is what seems to me the defendant is urging. I don't understand that to be the law. I have never known a case or rule has been pointed to my attention which suggests that it is the law. I don't think it is.[2]
*189 In a non-jury trial, jeopardy attaches once the first witness is sworn. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975); State v. Lynch, 79 N.J. 327, 341 (1979). However, as the Lynch court noted, "whether double jeopardy precludes a second trial depends upon how and why the second proceeding came into being, due consideration being given to `the ends of public justice.'" 79 N.J. at 341 quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 166 (1824).[3]
Where there has been no final resolution of the merits of the charges against the defendant, "a trial court has a discretionary range within which it may properly operate to grant a mistrial whether on its own motion or otherwise." State v. Rechtschaffer, 70 N.J. 395, 406 (1976). However, the court's discretion is not without limits and, generally, when the trial is terminated without the defendant's consent or without legal justification, see United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); State v. Farmer, 48 N.J. 145, 169 (1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967); see also State v. Rechtschaffer, 70 N.J. at 406-411 the defendant should not subjected to the harassment of a new *190 trial. Cf. N.J.S.A. 2C:1-9d with respect to crimes, disorderly persons offenses and petty disorderly persons offenses. See N.J.S.A. 2C:1-14k; see also N.J.S.A. 2C:1-5b.
Clearly, had the mistrial been declared in order to permit the State to gather new evidence or supplement that which it already had, or was further adjourned after a long delay because further testimony from Officer Seymour was essential to its case, retrial would be barred. See, e.g., State v. O'Keefe, supra. However, despite the fact that Seymour's non-appearance clearly contributed to the mistrial decision, we will assume  as did the Law Division  that the decision was made merely because the transcript of the previous proceedings was substantially unavailable.[4] We nevertheless conclude that a retrial was barred under the circumstances where the mistrial was declared sua sponte by the judge over defendant's objection. United States v. Jorn, supra. Cf. State v. Tropea, 78 N.J. at 313-16.[5]
The municipal court's stated reason for declaring a mistrial  that "both parties, the state and the defendant would be prejudiced by an absence of ... [a] complete and accurate record of what occurred on [October 6, 1987]"  appears to be inaccurate and, in any event, non-dispositive. Defendant was entitled under the circumstances to have the judge decide his guilt or innocence without giving the State the opportunity to start *191 anew. The absence of an entirely transcribed record would only pose an issue if defendant were convicted, for if he was found not guilty there could be no appeal. Had defendant been convicted in the municipal court and appealed, the Law Division could have supplemented the record with evidence in lieu of a "partially unintelligible" record, or could have conducted a plenary trial de novo if "the rights of either party may be prejudiced by a substantially unintelligible record." R. 3:23-8(a). State v. Higgins, 132 N.J. Super. 67 (App.Div. 1975).
It is true that the 1983 amendment to R. 3:23-8(a) permits a remand for new trial when there is a substantially unintelligible record and that, in such instance, there would be a new plenary trial in the municipal court. Hence, it is suggested that, because the matter had to be retried in a plenary fashion  in the Law Division or municipal court  the mistrial merely saved time and was premised on "manifest necessity." See Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). However, putting aside that defendant was deprived of the possibility of an initial acquittal instead of a new trial, the 1983 amendment was premised on an appeal to the Law Division following conviction. A new trial may almost always be conducted after conviction, with no double jeopardy bar, unless there was insufficient proof at the first trial. See, e.g., Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Further, the constitutionality of the two tier system permitting retrial of a defendant after conviction in a municipal or similar court (even in the absence of a record) is premised on a conviction in that court. See, e.g., Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 304-313, 104 S.Ct. 1805, 1811-1816, 80 L.Ed.2d 311, 322-327 (1984); Ludwig v. Massachusetts, 427 U.S. 618, 630-632, 96 S.Ct. 2781, 2787-2789, 49 L.Ed.2d 732, 741-742 (1976); Colten v. Kentucky, 407 U.S. 104, 112-120, 92 S.Ct. 1953, 1958-1962, 32 L.Ed.2d 584, 591-595 (1972). In any event, we are satisfied that the totality of facts, including the four month delay in the proceedings and *192 in the mistrial over defendant's objection when the record was found to be lacking and the police officer did not appear for trial  in circumstances in no way attributable to defendant  requires a holding that defendant could not be retried as a result of the trial judge's inappropriate exercise of discretion. Cf. State v. Tropea, supra.
Reversed.
NOTES
[1] We do not understand why the matter was carried four months and note that the length of time apparently contributed to the judge's view that a mistrial was required. Before granting the mistrial, the judge referred to the "difficulty we've had rescheduling this matter...."
[2] Despite the position of the parties before us, the provisions of N.J.S.A. 2C:1-9 do not apply to title 39 violations, see N.J.S.A. 2C:1-5b, 2C:1-14k, and in any event must be read in light of constitutional dictates and requirements after which they were modeled. Further, defendant's objection to mistrial and recommencement of proceedings in the municipal court was made before any issue of supplementary discovery was raised, and this case doesn't involve the traditional continuance but an entire new trial after a mistrial.
[3] Although motor vehicle violations do not fall within the scope of the criminal justice system, being "petty" offenses rather than "crimes", see State v. Macuk, 57 N.J. 1, 9-10 (1970), and thus arguably are not subject to the double jeopardy provisions of the Federal and State constitutions, see ibid.; State v. Zucconi, 93 N.J. Super. 380 (App.Div. 1967), aff'd, 50 N.J. 361 (1967), considerations of "fundamental fairness" can militate against the retrial of a motor vehicle offense in much the same manner as the double jeopardy clause, cf. State v. Tropea, 78 N.J. 309, 316 (1978). Further, recent cases seem to apply Fifth Amendment values to this type of case, see Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and the New Jersey Supreme Court has applied double jeopardy principles to non-indictable offenses, see State v. DeLuca, 108 N.J. 98 (1987); State v. Dively, 92 N.J. 573 (1983); State v. Barnes, 84 N.J. 362 (1980). See also, e.g., State v. Calvacca, 199 N.J. Super. 434 (App.Div. 1985); State v. O'Keefe, 135 N.J. Super. 430, 435 (Cty.Ct. 1975). In any event, the State does not contend that the double jeopardy clause does not apply. And note, the cases cited and discussion in State v. Tropea, 78 N.J. at 315-316.
[4] We need not consider the impact of the delay of proceedings in that respect. See State v. O'Keefe, supra. We do note, however, that a delay during any trial of four months is inexcusable and affects the fact finder's recollection and assessment of credibility. See Lister v. J.B. Eurell Co., 234 N.J. Super. 64 (App.Div. 1989). Here, the judge should have relied upon his notes and any additional testimony of Seymour properly recorded in deciding the case, and the trial de novo could have been conducted pursuant to R. 3:23-8(a).
[5] Although facially more narrow than the double jeopardy provisions of the Fifth Amendment, the double jeopardy provisions of the New Jersey Constitution have been interpreted to be co-extensive in application with those of the federal. State v. Rechstaffer, 70 N.J. at 404; State v. Farmer, 48 N.J. at 168. In any event, we are obligated to follow the broader protection of the federal constitution. State v. Rechstaffer, 70 N.J. at 404; State v. Barnes, 84 N.J. at 370.