282 N.J. Super. 590 (1995)
660 A.2d 1246
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HAROLD LOVE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1995.
Decided July 11, 1995.
*591 Before Judges STERN, KEEFE and HUMPHREYS.
Susan L. Reisner, Public Defender of New Jersey, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).
Harold Love, appellant, filed a pro se supplemental brief.
Jeffrey S. Blitz, Atlantic County Prosecutor, attorney for respondent (Jack J. Lipari, Assistant County Prosecutor, of counsel and on the brief).
PER CURIAM.
The defendant, a convicted murderer of an elderly woman, was arrested for armed robbery while on parole. His victim was a Canadian woman who was touring the United States with a friend. The evidence disclosed that he attacked the female victim in her car. He struck her in the head with his gun causing a bloody gash which required eight stitches. During the attack, he tried to strangle her. The evidence of his guilt was overwhelming.
Defendant was indicted for robbery, N.J.S.A. 2C:15-1 (count one) and armed robbery, N.J.S.A. 2C:15-1 (count two). After conviction by a jury on June 21, 1993, defendant was sentenced on count two to the custody of the Commissioner of the Department of Corrections for thirty years, with fifteen years to be served before parole eligibility. The first count was merged into the *592 second. The sentence was made consecutive to a parole violation defendant was then serving.
On this appeal, defendant argues, through counsel, that because he was convicted at a second trial, "held following declaration of a mistrial" at the first trial, his Federal and State "constitutional protections against twice being placed in jeopardy" were violated, and the indictment must be dismissed. Defense counsel also argues that "the reasonable doubt charge was fatally flawed."
In a pro se supplementary brief, defendant further argues:
Point I: DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL.
Point II: POLICE AND PROSECUTOR MISCONDUCT AT THE GRAND JURY DEMANDS A DISMISSAL OF THE INDICTMENT.
Point III: THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND IT MUST BE SET ASIDE AND THE INDICTMENT MUST BE DISMISSED.
Point IV: THE TRIAL COURT ABUSED ITS DISCRETION IN DECLARING A MISTRIAL WITHOUT CONSIDERING THE ALTERNATIVES.
The principal question raised by this appeal is whether the sua sponte declaration of mistrial by the trial judge during the first day of trial, without any expressed consent from defendant, bars the retrial commenced the very next day, requires reversal of this conviction and precludes any further prosecution of the defendant.
After a thorough review of the record and consideration of all pertinent factors including the great importance of public justice, we conclude that the defendant's interest in avoiding multiple and oppressive prosecutions was not subverted. We, therefore, affirm the conviction. We also outline procedures that should be followed at the trial level in similar circumstances.

I.
The first jury was sworn and testimony commenced on the morning of June 15, 1993. During the testimony of the fourth State witness, the jury was excused so that counsel could argue an issue relating to "chain of custody." During that argument, the transcript reflects that the "court [was] called to recess." The *593 record reflects nothing further until the jury returned to the jury box, at which time the judge advised the jurors in the presence of counsel as follows:
THE COURT: Ladies and gentleman, I am going to declare a mistrial in this case. It has nothing to do with either of the litigants, their  the attorneys or the defendant or you. I just received a phone call that my mother-in-law passed away this afternoon, and I have some things I must attend to as a result of that, and I will not be available for the rest of this week. Due to the scheduling problems  normally what I would do is I would continue the case and dismiss you for the balance of this week and have you come back next week and we would finish it, but due to some scheduling problems that obviously could not be anticipated and the difficulty that it causes for various witnesses in the case, I'm going to declare a mistrial. You'll be released to return to the jury assembly area, and our jury coordinator will tell you what happens to the rest of your jury service for this week. I thank you for your careful attention to the proceedings to this point, and I'd like to thank counsel for their very professional presentation to this point, and I apologize for any inconvenience. Thank you.
Nothing was stated at the time by either counsel.
On the very next day, following denial of defendant's motion to dismiss the indictment under N.J.S.A. 2C:1-9d, the case was recommenced before a second jury.
Immediately prior to jury selection, the new judge heard a motion by the defendant to dismiss, on the grounds of double jeopardy. What happened the previous day was explained by counsel during argument on the motion. Defense counsel stated that the trial judge had "received a phone call that his mother-in-law had passed away." Defense counsel and the prosecutor were then called into chambers, whereupon they were told that the judge:
[d]id not think he would be able to finish the  he knew he would not be able to sit on the trial the rest of this week and he wasn't sure about next week. At that point, we were not sure how to proceed. We did not know if he would be able to have another judge sit in at that time to continue with the hearing  the trial.
The trial judge then called an experienced judge with whom he discussed the matter and then "decided he was going to declare a mistrial." The judge then returned to the courtroom and "waited for the jury to come in."
Defense counsel described what happened thereafter.

*594 I was sitting with my client. [The prosecutor] was in the hallway on her way in. I never consented or objected to the judge's motion for a mistrial. I never discussed with my client to give him an opportunity to decide whether he'd want to continue with the jury he had or, in fact, agree to consent to the mistrial and pick another jury.
Defense counsel further explained that while defendant "did want a jury, and we wanted to proceed as soon as possible," "the trial was improperly terminated, and we did not consent to it."
The prosecutor in arguing against dismissal of the indictment described as follows what happened when counsel "walked into chambers" to discuss the issue of chain of custody:
We waited for him to get off the telephone, and he explained to us that, as I indicated, his wife was very distraught that her  her mother had died suddenly and unexpectedly and she had been unable to reach anyone. He further indicated that he was an hour away from home and that he had to leave. He had to get out of here and go home and so forth, and it was apparent there was stress on his face and in his demeanor and his voice and so forth that he  there was an urgency to his need to leave the courthouse. He said that `I don't know what I'm going to do about this case. I don't know if we'll mistry it or not. I'm not sure what the procedure should be. I'm going to call Judge [B], which is what he did. He phoned Judge [B] in our presence. He discussed the situation with Judge [B] including the fact of the State's witnesses having just arrived from Canada yesterday afternoon and then  that there being some wish on the part of the State that the case proceed, whether that could be effected through the assignment of another judge to pick up the case from that point on or to start the case anew, whatever; but he discussed the matter with Judge [B]; and after he got off the telephone, he advised us that he was going to mistry the case. Now, needless to say, counsel and I in that position were in the situation where we both had an interest in the case proceeding from that point on, but neither of us was in a situation where we could tell [the trial judge] `Forget your wife and forget your mother-in-law's death. Let's get on with this trial.' I mean there was an urgency and an emergent situation here that none of us had previously encountered.
The prosecutor further argued on the motion to dismiss that she was not seeking a mistrial to "shore up my proofs [or] do anything of that nature," and that there was no double jeopardy bar to retrial. She advised the new trial judge that two witnesses from Canada had returned to New Jersey for the trial and had "concern on their part about remaining here largely arising out of her fear of the community generally based on her prior experience" resulting in this indictment. The prosecutor also took the "position that silence is acquiescence" and that, because defense counsel did not *595 object to the mistrial when it was declared by the trial judge after discussion of "ten minutes or so in chambers," defendant consented thereto. The prosecutor argued that "defendant, through counsel, had adequate opportunity, while the issues were being discussed, to raise the objection to there being a mistrial." The prosecutor also argued that after the chamber conference, both counsel knew the court intended to declare a mistrial. The defense counsel had an opportunity to object thereafter while the judge was sitting on the bench waiting for the jury to return and be advised of the mistrial.
The motion judge denied the application to dismiss the indictment. She found that "defendant consented to the mistrial ... by silence" and "that there was a sufficient legal reason" and "overriding necessity" for the first judge "to have declared the mistrial."
Defendant now claims that the second prosecution violated his Federal and State constitutional rights. He does not advance any separate argument based on N.J.S.A. 2C:1-9. As defendant notes, this statute was enacted "in observance of [the] constitutional guarantee" against being twice placed in jeopardy,[1] and *596 therefore this case turns on constitutional values. State v. Gallegan, 117 N.J. 345, 352, 567 A.2d 204 (1989); State in the Interest of D.P., 232 N.J. Super. 8, 13-14, 556 A.2d 335 (App.Div. 1989). Moreover, given the language and history resulting in N.J.S.A. 2C:1-9d, we perceive no legislative intent to provide broader protection to a criminal defendant than that required by either the Federal or State Constitution. See Cannel, New Jersey Criminal Code Annotated, comment 5 on N.J.S.A. 2C:1-9 (1971).
Our State Constitution, N.J.S.A. Const. (1947), Art. 1, ¶ 11 provides that "No person shall, after acquittal, be tried for the same offense." This provision has been consistently interpreted as coextensive with the Federal Constitution's protection against double jeopardy. State v. Churchdale Leasing, Inc., 115 N.J. 83, 107, 557 A.2d 277 (1989); State v. Rechtschaffer, 70 N.J. 395, 404, 360 A.2d 362 (1976); State v. Capak, 271 N.J. Super. 397, 403, 638 A.2d 918 (App.Div.), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994). See also Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:1-9 (1994).
Jeopardy attached when the first jury was empaneled and sworn. Crist v. Bretz, 437 U.S. 28, 35-38, 98 S.Ct. 2156, 2160-62, 57 L.Ed.2d 24, 32-33 (1978). Termination of proceedings after jeopardy attaches, without defendant's consent by motion or otherwise, may bar reprosecution. See United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); State v. Romeo, 43 N.J. 188, 203 A.2d 23 (1964), cert. denied, 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 563 (1965); State v. Leonard, 234 N.J. Super. 183, 560 A.2d 711 (App.Div. 1989). However, neither the controlling cases nor N.J.S.A. 2C:1-9 prohibit retrial following termination if defendant consents or waives the right to assert double jeopardy, or if the retrial is the necessary result of a hung jury, or when there is "a sufficient legal reason and a manifest or *597 absolute or overriding necessity." N.J.S.A. 2C:1-9d.[2]See also, e.g. Oregon v. Kennedy, 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416, 423 (1982); Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).
In State v. Rechtschaffer, 70 N.J. 395, 410-11, 360 A.2d 362 (1976), our Supreme Court said:
The common threads that run through the Supreme Court cases are centered about the propriety of the trial court's granting sua sponte the mistrial and its cause. Did the trial court properly exercise its discretion so that a mistrial was justified? Did it have a viable alternative? If justified, what circumstances created the situation? Was it due to prosecutorial or defense misconduct? Will a second trial accord with the ends of public justice and with proper judicial administration? Will the defendant be prejudiced by a second trial, and if so, to what extent?
More recently, our Supreme Court in State v. Gallegan, supra, 117 N.J. at 353, 567 A.2d 204, noted that a Court's grant of a mistrial does not necessarily bar a retrial. Quoting from State v. Laganella, 144 N.J. Super. 268, 365 A.2d 224 (App.Div.), app. dis., 74 N.J. 256, 377 A.2d 652 (1976), Justice O'Hern wrote:
"[W]e have become increasingly candid in our facing up to an awareness that important interests other than those of defendant alone are involved in the trial of criminal cases." ... In Laganella, the court ruled that a dismissal of an indictment following the presentation of State's witnesses because of the State's failure to comply with a discovery obligation did not necessarily bar retrial. The court concluded that "[t]o apply the bar of double jeopardy in the instant matter, absent compelling considerations of fairness to defendant or for the purpose of protection against governmental action found by us not to be arbitrary, would disserve that purpose, for there has still been no trial on the merits."
[State v. Gallegan, supra, 117 N.J. at 353, 567 A.2d 204 (citations omitted).]
*598 Applying these principles here, we find that retrial was permissible.
The alternatives to a mistrial should have been considered on the record. If, because of personal reasons such as those involved here, the judge was unable to consider them, the matter should have been referred to another judge for such consideration. Any reasonable alternative should be contemplated before a mistrial is granted without defendant's express consent. See United States v. Jorn, supra, 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 558; Arizona v. Washington, supra, 434 U.S. at 525, 98 S.Ct. at 840, 54 L.Ed.2d at 740 (Marshall, J. dissenting); Brady v. Samaha, 667 F.2d 224, 229 (1st Cir.1981). Unfortunately, no effort was made prior to the mistrial to develop on the record the defendant's position, or that of the State, concerning continuation of the trial before another judge, consent to a mistrial, carrying the trial until the trial judge could return, or some other alternative.
We are nevertheless satisfied that the sua sponte declaration of mistrial did not preclude the retrial. The mistrial was caused exclusively by the death of the judge's mother-in-law, and was in no way designed to help the prosecution or aid the State's cause or for any reason based upon the conduct of the trial or proceedings. Hence, there was no disposition based on the merits of the case or attributable to the same. Cf. United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (no bar to retrial when defendant's motion for dismissal after jeopardy attached was granted without submission of the case to the jury, and the disposition was unrelated to guilt or innocence or the merits of the case). Moreover, while it is impossible to list all legal reasons which would constitute manifest or overriding necessity permitting a mistrial without defendant's consent, our Supreme Court in State v. Romeo has stated:
The law in this state is thoroughly established that, while principles of double jeopardy may be applicable to bar a second trial where the first has been terminated short of verdict, yet `... if the first trial was terminated or the jury *599 discharged because of incapacitating illness of the judge or juror or jurors or of the defendant ..., subsequent prosecution for the offense [is] not barred.'
[State v. Romeo, supra, 43 N.J. at 195, 203 A.2d 23.]
Here, the judge became incapacitated in the sense that he had to leave the courthouse and remain unavailable for some period of time due to the family tragedy. In declaring the mistrial, the judge did not act in "bad faith" or with a motive "to improve the chances of conviction at a subsequent trial." State v. Farmer, 48 N.J. 145, 171, 224 A.2d 481 (1966). Further, the declaration of mistrial did not result in any way from a consideration of the merits of the case or the conduct of the trial. Thus, while defendant did not expressly consent to the sua sponte declaration of mistrial, there was no improper termination of the first trial which barred reprosecution.
Here there was no oppressive arbitrary behavior or other misconduct by the State. As pointed out by the State on the motion to dismiss, defendant had an opportunity to object to the mistrial or seek a continuance of the trial before another judge or ask for a short adjournment to permit the trial to continue before the same judge. The defendant remained silent and now seeks to avoid prosecution for his crime by taking advantage of the confusion and uncertainty caused by the judge's personal tragedy. The defendant has not pointed to any prejudice or unfairness to him. The trial began again the next day. The second trial clearly accorded with the ends of public justice and due administration of the criminal justice system. See State v. Rechtschaffer, supra. Under such circumstances, reversing this conviction and allowing this defendant to escape justice, would be a gross miscarriage of justice.

II.
Defendant raised no objection to the charge at trial. In any event, the charge as a whole conveyed to the jury its obligation to find defendant guilty by proof beyond a reasonable doubt. See State v. Reyes, 140 N.J. 344, 359, 658 A.2d 1218 (1995); State v. *600 Heslop, 135 N.J. 318, 327, 639 A.2d 1100 (1994). See also Victor v. Nebraska, 511 U.S. ___, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Compare Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
The other issues raised by defendant do not warrant discussion in a written opinion. See R. 2:11-3(e)(2).
The judgment of conviction is affirmed.
NOTES
[1] N.J.S.A. 2C:1-9 provides in relevant part:

A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:
d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts. Termination under any of the following circumstances is not improper:
(1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.
(2) The trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed.
(3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.
[2] The language in N.J.S.A. 2C:1-9d(3), using wording from State v. Romeo, supra, 43 N.J. at 196, 203 A.2d 23 and State v. Locklear, 16 N.J. 232, 243, 108 A.2d 436 (1954) is substantially the same as the exception recognized in the United States Supreme Court cases permitting retrial when the mistrial, without defendant's consent, was caused by "manifest necessity" or where "the ends of substantial justice cannot be attained without discontinuing the trial." Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961).