685 A.2d 494

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CLARENCE RICARDO HALEY, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 7, 1996—Decided December 2, 1996.

Before Judges KEEFE and CONLEY.

*Abby P. Schwartz,* Assistant Deputy Public Defender argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Ms. Schwartz,* of counsel and on the brief).

*Sara B. Liebman,* Assistant County Prosecutor, argued the cause for respondent (*Edward M. Neafsey,* Acting Union County Prosecutor, attorney; *Ms. Liebman,* of counsel and on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

During defendant's first jury trial, it was discovered that a police report containing references to other offenses in which defendant was a suspect had been sent to the jury during its deliberations along with the properly admitted evidence. Defen-

dant's motion for a mistrial was granted. Thereafter, defendant was convicted by a second jury of first-degree robbery, *N.J.S.A.* 2C:15–1 (count one) and third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(2) (count two). Count two was merged into count one, and a twenty-year custodial term with a ten-year parole disqualifier was imposed, along with the necessary Violent Crimes Compensation Board penalties.

On appeal, defendant raises the following contentions:

POINT I.    THE TRIAL COURT ERRED BY FAILING TO CONDUCT A HEARING TO DETERMINE WHETHER THE MISTRIAL IN THE FIRST TRIAL WAS CAUSED BY STATE ACTION IN VIOLATION OF DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL PROTECTION AGAINST TWICE BEING PLACED IN JEOPARDY.

POINT II.   THE DEFENDANT DID NOT KNOWINGLY AND INTELLIGENTLY WAIVE HIS RIGHT TO COUNSEL GUARANTEED UNDER THE STATE AND FEDERAL CONSTITUTIONS.

POINT III.  THE TRIAL JUDGE VIOLATED DEFENDANT'S RIGHT TO PRESENT A DEFENSE BY DENYING DEFENDANT'S REQUEST FOR AN ADJOURNMENT TO PRESENT THE ALIBI TESTIMONY OF HIS MOTHER.

POINT IV.   THE TESTIMONY OF OFFICER BRENNAN WHEREIN HE STATED THAT HE BELIEVED THAT MR. HALEY WAS THE SUSPECT FROM THE ROBBERY WAS IRRELEVANT AND SO PREJUDICIAL AS TO DENY DEFENDANT HIS RIGHT TO A FAIR TRIAL. (Not raised below).

POINT V.    THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON DEFENDANT'S RIGHT NOT TO TESTIFY ON HIS OWN BEHALF WHERE SUCH A CHARGE WAS REQUESTED BY MR. HALEY.

POINT VI.   THE SENTENCE IMPOSED IS EXCESSIVE AND IS UNSUPPORTED BY THE STATUTORY AGGRAVATING AND MITIGATING FACTORS.

We have carefully considered these contentions in light of the entire record. We are convinced that point V requires a reversal. It is not, therefore, necessary for us to consider defendant's other contentions except the double jeopardy claim raised in point I. As to that, we are convinced it is without merit and requires no further opinion. *R.* 2:11–3(e)(2). *See generally State v. Love,* 282 *N.J.Super.* 590, 596–99, 660 *A.*2d 1246 (App.Div.), *certif. denied,* 142 *N.J.* 572, 667 *A.*2d 189 (1995). *Compare State*

*v. Andrial,* 203 *N.J.Super.* 1, 8–9, 495 *A.2d* 878 (App.Div.1985) *with State v. Nappo,* 185 *N.J.Super.* 600–605, 450 *A.2d* 604 (Law Div.1982). We observe only that the mistrial plainly was "required by a sufficient legal reason and a manifest or absolute or overriding necessity." *N.J.S.A.* 2C:1–9(d)(3). There is, moreover, not the slightest hint that anything other than clerical mistake caused the inclusion of the police report in the evidence that was transmitted to the jury during the first trial. The trial judge's conclusion that prosecutorial misconduct was not involved is unassailable. We specifically reject defendant's claim that he was entitled to a plenary hearing as to that.

█ We address, then, defendant's contention in point V that the trial judge's failure to instruct the jury on the defendant's right not to testify constitutes reversible error. In addressing this point, we note that the State's evidence was substantially premised upon the identification by the three victims of defendant as the perpetrator. We need not recount that evidence in detail, but we acknowledge that the evidence was fairly convincing, at least in the face of no counter evidence. We note, however, some discrepancy in the description of the clothing worn by the perpetrator and that worn by defendant at the time of his apprehension shortly after the robbery. We further observe some hesitancy on the part of one of the victims, Mr. Kish, in his "show-up" identification of defendant that occurred within minutes after the robbery. During this show-up identification, Mr. Kish admitted that he had asked one of the other victims whether that was "the guy" and admitted that he did so because he had some doubts about whether defendant was the robber. We also note that defendant's alibi witness, his mother, had testified in the first trial, but was not timely available during the second trial. Defendant's request for a short adjournment so that her testimony could be obtained was denied. The propriety of that denial is raised in defendant's point III which we deem unnecessary to address. Suffice it to say, by virtue of that ruling defendant was left solely with a defense of mistaken identification, a defense that frequently carries separate

concerns. *E.g., State v. Green,* 86 *N.J.* 281, 291–92, 430 *A.*2d 914 (1981).

It is within the context of these circumstances that we consider the trial judge's failure to advise the jury that no inference may be drawn from defendant's decision not to testify.[1] In this trial, defendant acted as his own counsel with the aid of standby counsel. During a charge conference, the trial judge discussed with defendant the Model Jury Charge regarding a defendant's election not to testify and asked defendant if he wanted that charge to be given to the jury. Defendant did so and specifically requested that charge. It is undisputed that the trial judge omitted the charge from his instructions to the jury.

To be sure, a "defendant is entitled to have the jury instructed that it may not draw any inferences adverse to the defendant on the basis of his failure to testify." *State v. Bogus,* 223 *N.J.Super.* 409, 422, 538 *A.*2d 1278 (App.Div.), *certif denied,* 111 *N.J.* 567, 546 *A.*2d 497 (1988); *State v. Smith,* 100 *N.J.Super.* 420, 425, 242 *A.*2d 49 (App.Div.1968). The failure to do so is of constitutional proportion. *Carter v. Kentucky,* 450 *U.S.* 288, 302, 101 *S.Ct.* 1112, 1120, 67 *L.Ed.*2d 241, 252 (1981). As the Court observed in *Carter:*

> We have repeatedly recognized that "instructing a jury in the basic constitutional principles that govern the administration of criminal justice" is often necessary. Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law. Such instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since "[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are ... guilty of crime . ." And, as the Court has stated, "we have not yet attained that certitude about the human mind which would justify us in ... a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court. ."
>
> [450 *U.S.* at 302, 101 *S.Ct.* at 1120, 67 *L.Ed.*2d at 252 (citations omitted).]

---

[1] Given defendant's extensive record, that choice might be considered no choice at all.

In holding that a trial judge possesses an "affirmative constitutional obligation" to utilize "a powerful tool at his disposal to protect the [defendant's Fifth Amendment] constitutional privilege—the jury instruction" when so requested by the defendant, 450 *U.S.* at 303, 101 *S.Ct.* at 1120, 67 *L.Ed.*2d at 252, the Court observed:

> The importance of a no-inference instruction is underscored by a recent national public opinion survey conducted for the National Center for State Courts, revealing that 37% of those interviewed believed that it is the responsibility of the accused to prove his innocence.
>
> [450 *U.S.* at 303 n. 21, 101 *S.Ct.* at 1120 n. 20, 67 *L.Ed.*2d at 252 n. 21 (citing 64 *A.B.A.J.* 653 (1978)).]

And, in rejecting the contention that the jurors knew they could not draw an adverse inference from the defendant's election not to testify simply from the instruction that they were to "determine guilt 'from the evidence alone,'" the Court observed that "[j]urors are not lawyers; they do not know the technical meaning of 'evidence.' . . . They can be expected to notice a defendant's failure to testify, and, without limiting instruction, to speculate about incriminating inferences from a defendant's silence." 450 *U.S.* at 303–04, 101 *S.Ct.* at 1121, 67 *L.Ed.*2d at 253.

The error here, then, was of not only constitutional proportion, but significant constitutional proportion. The State asserts, nonetheless, that it was mere "invited-error" and thus not reversible. Often, it has been said that trial errors induced, encouraged or acquiesced in by defense counsel may not be a basis for reversal on appeal, except where invited errors . . . "'go so plainly to the integrity of the proceedings that . . . a new trial is the just course.'" *State v. Simon*, 79 *N.J.* 191, 205, 398 *A.*2d 861 (1979) (quoting *State v. Macon*, 57 *N.J.* 325, 338, 273 *A.*2d 1 (1971)). *See State v. Harper*, 128 *N.J.Super.* 270, 278, 319 *A.*2d 771 (App.Div.), *certif. denied*, 65 *N.J.* 574, 325 *A.*2d 708 (1974).

■ On the other hand, it has also consistently been recognized that proper jury instructions are essential to a fair trial, *State v. Collier*, 90 *N.J.* 117, 122, 447 *A.*2d 168 (1982), and that erroneous instructions "are almost invariably regarded as prejudicial" and as "'poor candidates for rehabilitation under the harmless error

philosophy,'" *State v. Vick,* 117 *N.J.* 288, 289, 566 *A.*2d 531 (1989) (citations omitted). It is, moreover, agreed by all that *pro se* defendant expressly requested the trial judge to include the no adverse inference charge. To be sure, after the jury charge neither defendant nor his standby counsel alerted the court to the missing charge. But there is no basis for inferring that that omission was intentional. The charge was lengthy and included an instruction that the jury not draw any adverse inferences from the fact that defendant was acting as his own attorney. We think it likely that both defendant and standby counsel simply missed the omission of the other no adverse inference charge, as did, evidently, the trial judge himself and the prosecutor. It was to no one's advantage to intentionally refrain from bringing that omission to the court's attention. In any event, we consider the error of such magnitude as to "'cut mortally into the substantive rights of the defendant,'" even if acquiesced in, so as to be considered by us. *See State v. Shomo,* 129 *N.J.* 248, 260, 609 *A.*2d 394 (1992) (quoting *State v. Harper, supra,* 128 *N.J.Super.* at 277, 319 *A.*2d 771).

The critical inquiry, then, is whether the error was harmless. *See Chapman v. California,* 386 *U.S.* 18, 87 *S.Ct.* 824, 17 *L.Ed.*2d 705 (1967); *R.* 2:10–2. In this respect, our Supreme Court has noted that "some constitutional errors may be harmless, but ... others are of such constitutional magnitude that they are always reversible error." *State v. Fusco,* 93 *N.J.* 578, 587, 461 *A.*2d 1169 (1983). We are of the view that the error in failing to instruct the jury that it may not draw an adverse inference from defendant's constitutional right to remain silent is such an error. *Bruno v. United States,* 308 *U.S.* 287, 293–94, 60 *S.Ct.* 198, 200, 84 *L.Ed.* 257, 260 (1939). *And see State v. Oliver,* 133 *N.J.* 141, 160, 627 *A.*2d 144 (1993) ("Given the gravity of charges and the severity of the sentence exposure, we agree with the majority below that the error was not harmless.... '[n]o judge can prevent jurors from speculating about why a defendant stands mute in the face of criminal accusation, but a judge can, and must, if requested

to do so, use the unique power of the jury instruction to reduce that speculation to a minimum.' " (quoting *Carter v. Kentucky, supra*, 450 *U.S.* at 303, 101 *S.Ct.* at 1120, 67 *L.Ed.*2d at 252)). *But see United States v. Hasting*, 461 *U.S.* 499, 510, 103 *S.Ct.* 1974, 1981, 76 *L.Ed.*2d 96, 107 (1983).

Even were this a constitutional error that, *per se*, does not require a reversal, we cannot say with any assurance that the failure to tell the jury it could not consider defendant's lack of testimony adversely "might [not] have contributed to the conviction." *State v. Sanchez*, 129 *N.J.* 261, 278, 609 *A.*2d 400 (1992).

Reversed and remanded for a new trial consistent with this opinion.