786 A.2d 107 (2001)
345 N.J. Super. 538
STATE of New Jersey, Plaintiff-Respondent,
v.
Ashley GEORGES and Gatsby Destin, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted September 25, 2001.
Decided November 13, 2001.
*108 Pope, Bergrin & Verdesco, for appellant Ashley Georges (John D. Caruso, Newark, of counsel and on the brief; Harley D. Breite, Wayne, on the brief).
Donald C. Campolo, Assistant Attorney General/Acting Prosecutor, for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).
Before Judges STERN, COLLESTER and PARKER.
The opinion of the court was delivered by PARKER, J.A.D.
We granted leave for defendant to appeal and granted a stay pending our determination of whether the trial judge's sua sponte declaration of a mistrial was improper resulting in a double jeopardy bar to defendant's retrial.[1] We conclude that under the circumstances of this case, the double jeopardy bar applies.
Defendants were charged in an Essex County indictment with three counts of drug offenses and three counts of weapons offenses. Jury selection for defendants' joint trial began on October 24, 2000. Fourteen jurors were seated after two days and testimony began on October 26. The trial continued on October 27, 30 and 31. On October 31, defense counsel completed their summations late in the afternoon, and the prosecutor's summation was scheduled for the next day, November 1.
Before adjourning on October 31, one juror was excused because she was starting a new job the next day, reducing the jury to thirteen. Another juror indicated he was ill with an ear and throat infection and would have to leave at noon on November 1 for a doctor's appointment. On November 1, two additional jurors failed to appear, reducing the jury to eleven. One juror's parent died overnight and the other's parent was gravely ill in the hospital. This juror's parent died a few days later. The defense was willing to proceed with eleven jurors but the State was not. After discussion with counsel, the court scheduled the trial to continue on November 9 because defense counsel were unable to proceed at an earlier date.
On November 9, defense counsel appeared but the prosecutor who had been trying the case did not. She had notified the court she had a Florida vacation scheduled to begin on November 7.[2] The prosecutor attempted to re-schedule the vacation but would have suffered significant financial penalties for doing so. The trial judge, therefore, advised defense counsel on November 9 that she was declaring a mistrial:
Under those circumstances, it would not be possible to proceed with this trial until, at the very earliest, November 13th. I was unwilling to delay the trial for that length of time since that would have, in fact, been fourteen days, a full *109 two weeks after any testimony had been given in the matter.
As a result, I had my secretary call the jury panel and tell them the trial would not be continued.
I will, at this point, declare a mistrial in this case and schedule the case again for trial. I understand there are objections to this procedure. Nonetheless, I find it a matter of manifest necessity governed by the unfortunate deaths of two jurors' parents, the excusal of another juror, and the schedules of both defense and prosecuting attorneys in this matter.
Defense counsel objected and the trial judge responded:
I think the appropriate forum in which to hear those objections would be in connection with a motion to dismiss on the grounds of double jeopardy.
In my view this is a case where mistrial was governed by manifest necessity, and I will be happy to consider any arguments that need to be made at that time. Nonetheless, the mistrial has been declared and at this point I am unwilling to reschedule the existing trial, finding that the lapse of time between the last appearance of counsel in this matter and the next available date, which would be at the earliest November 14th [sic], is simply too great to permit the jury to fairly remember and evaluate the testimony in this case.
Defense counsel continued to object:
MR. CARUSO: Judge, I view this case in a nutshell as one of a situation where a prosecutor is on a vacation, and that's why there's a mistrial being declared. When this Court said that this jury was comingfirst of all, this jury wanted to come back. I remember, and I specifically remember juror number 6 nodded her head and wanted to come back today to settle this case. This jury candid not wantthis jury wanted to be back, Judge.
THE COURT: Mr. Caruso, I do not think it appropriate to make a record one way or the other as to the opinions of the jury. We do not have those jurors present, but what their feelings are is irrelevant to the proceeding.
MR. CARUSO: What I'm saying, judgecan I finish, please?
THE COURT: My determination is based on the length of time that would intervene beforebetween the taking of testimony and the conclusion of the trial. In my view waiting to Thursday was as close to the limit as it was possible to get without causing a situation in which there were unfair prejudices to one side or the other.
MR. CARUSO: Judge thank you.
THE COURT: In my view, waiting any longer would have caused a manifest injustice.
As the court suggested, defense counsel filed a motion to dismiss on the grounds of double jeopardy. That motion was argued on February 2, 2001 and on February 6, the court filed its written opinion denying defendants' motion. In that opinion, the trial judge stated that in her view,
[T]he gap of thirteen days, when coupled with the emotional distress of two jurors caused by the deaths of their parents, created a situation in which fair consideration of the evidence and a return of a verdict based on that evidence could not be assured. As a consequence, in the interest of justice, I ordered a mistrial in the matter.
....
I find that the State has met the "heavy burden" of "demonstrating that a mistrial was required by a high degree of necessity." State v. Dunn[s], 266 N.J.Super. 349, 363, 629 A.2d 922 (App.Div.1993), *110 quoting State v. Gallegan, 117 N.J. 345, 351-52, 567 A.2d 204 (1989). In that regard, I note that if trial had recommenced on November 13, 2000, thirteen days would have elapsed from the last presentation of testimony and from defendants' closing arguments. Under these circumstances, the jury may well have forgotten crucial elements of the evidence. Moreover, I find that a brief recapitulation of that evidence by defense attorneys would have been inadequate to adequately recapture the testimony presented at trial and to permit the jury to fairly judge the credibility and weight of that testimony. To permit a full repetition of defendants' closing arguments would have unfairly prejudiced the State, since it, unlike the defendants, would be limited to a single closing argument. As an additional matter, I am mindful of the fact that two of the deliberating jurors had lost parents within a period of less than two weeks prior to the proposed deliberations. Under those circumstances, it would be unreasonable to expect perfect recall or complete concentration on those jurors' part. Similarly, the understandable emotions accompanying the death of a parent could well cloud the judgment of the two bereaved jury members. The significance of the charges against defendants must also be considered in this regard. As stated previously, both defendants were charged with second degree crimes as the result of the quantity of cocaine allegedly recovered and the discovery of an unlicenced [unlicensed] handgun at the scene of the crime. Thus, if convicted, both defendants faced an almost unrebuttable presumption of incarceration, with a five-year minimum term of custody. See N.J.S.A. 2C:44-1d; State v. O'Connor, 105 N.J. 399, 522 A.2d 423 (1987). No defendant facing such exposure should have his fate entrusted to a jury removed by time from the evidence and by misfortune from an unclouded recollection of what had taken place at trial.
The trial judge concluded that "under the unusual facts of this case, which include the deaths of parents of two jurors after closing arguments by the defense and prior to the State's closing and include, as well, a necessary hiatus in proceedings of at least thirteen days, I find the declaration of a mistrial to have been manifestly necessary and in the interest of justice."
The Fifth Amendment of the United States Constitution protects an individual from being tried twice for the same offense. U.S. Const. amend. V. The New Jersey Constitution provides similar double jeopardy protection. N.J. Const. art. I ¶ 11. In addition to the State and Federal Constitutions, the New Jersey Criminal Code provides additional protection in N.J.S.A. 2C:1-9:
A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:
....
d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn ... but before findings were rendered by the trier of facts. Termination under any of the following circumstances is not improper:
(1) The defendant consents to the termination or waives, by motion to dismiss *111 or otherwise, his right to object to the termination.
....
(3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.
The commentary to the New Jersey Criminal Code reports that this section was rewritten "to allow termination for `manifest or absolute or overriding necessity' and `a sufficient legal reason'" rather than categorize circumstances justifying declaration of a mistrial. Cannel, New Jersey Criminal Code Annotated, comment 6 on N.J.S.A. 2C:1-9 at 74 (2001-2002). There is no categorical listing of circumstances leading to a mistrial which may be utilized in a rule of thumb application of double jeopardy. Nevertheless, the code and case law express particular concern when a mistrial is declared over a defendant's objections. Each case must be considered on its own facts. State v. Farmer, 48 N.J. 145, 224 A.2d 481 (1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967).
Jeopardy attaches, of course, "when the jury is impaneled and sworn." State v. Dunns, 266 N.J.Super. 349, 362, 629 A.2d 922 (App.Div.1993), certif. denied, 134 N.J. 567, 636 A.2d 524 (1993). Double jeopardy protection affords a defendant a "valued right to have his trial completed by a particular tribunal...." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).
In State v. Loyal, 164 N.J. 418, 753 A.2d 1073 (2000), the Supreme Court affirmed a trial judge's sua sponte declaration of a mistrial over defendant's objections where it came to light during the trial that defense counsel had previously represented a recanting witness. In that case, the Supreme Court found that "the primary basis for the trial court's declaration of a mistrial in this matter was the vindication of the public interest in a fair trial." Id. at 443, 753 A.2d 1073. "Where a trial court declares a mistrial because of a substantial concern that the trial's result may be tainted, `the trial judge's determination is entitled to special respect.'" Id. at 436, 753 A.2d 1073, quoting Arizona v. Washington, 434 U.S. 497, 510, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).
In State v. Rechtschaffer, 70 N.J. 395, 360 A.2d 362 (1976), our Supreme Court addressed the question of whether double jeopardy applied when the trial judge sua sponte declared a mistrial based upon "highly prejudicial statements" made by the prosecutor during examination of a witness. The trial judge found that the prosecutor acted in good faith but defendant had nevertheless been unduly prejudiced by the remarks. The Supreme Court, in reviewing the jurisprudence of double jeopardy, stated:
"Manifest necessity" and "the ends of public justice" are concepts whose definitive outlines depend upon the singular facts and circumstances of each case. Existence of these two criteria depends upon balancing two prime factors: Public interest in seeing that there is a fair trial designed to end in a just and equitable judgment; and the constitutional protection to which the defendant is entitled that he shall not be harassed by subjection to two trials and two punishments for essentially the same offense.
[Id. at 405, 360 A.2d 362 (citations omitted).]
The Supreme Court posed a series of questions to be asked by appellate courts in reviewing a sua sponte declaration of a mistrial.
Did the trial court properly exercise its discretion so that a mistrial was justified? Did it have a viable alternative? *112 If justified, what circumstances created the situation? Was it due to prosecutorial or defense misconduct? Will a second trial accord with the ends of public justice and with proper judicial administration? Will the defendant be prejudiced by a second trial, and if so to what extent?
[Id. at 410-11, 360 A.2d 362 (citation omitted).]
There, the Supreme Court found "that neither the prosecutor nor the defense counsel concurred in the trial court's action;" "no prosecutorial manipulation or misbehavior [was] charged;" defendant was prejudiced and "the dual trial conflicted with proper judicial administration." Id. at 411, 360 A.2d 362. The Court concluded, therefore, "that neither manifest necessity nor the ends of public justice warranted the grant of the partial mistrial." Ibid.
In Farmer, the Supreme Court stated: The important and relevant conclusion to be drawn from the [Federal and State] cases is that no hard fast or mechanically applied rule exists which compels a finding of double jeopardy whenever a criminal trial in progress is discontinued, or which suggests that every time such a trial begins, the defendant is entitled to go free if the trial does not end in a final judgment.
....
Obviously there can be no cataloguing of events or conduct which, without more, will require a holding of double jeopardy when a mistrial is ordered without the defendant's consent. The circumstances must be examined with a mind conscious of the trial milieu and the fact that its atmosphere, vagaries, emotional stimuli and urgency of decision only rarely can be captured in a cold appellate record. They must be looked at also with an awareness that a person accused of crime has no natural constitutional right to be exempted from those procedural practices which are deemed necessary in the effort of the State to make sure that the conduct and final result of the trial should be in accordance with law and justice to all defendants and to the public.
[Farmer, supra, 48 N.J. at 170-171, 224 A.2d 481.]
In State v. Love, 282 N.J.Super. 590, 660 A.2d 1246 (App.Div.1995), certif. denied, 142 N.J. 572, 667 A.2d 189 (1995); habeas corpus granted by Love v. Morton, 944 F.Supp. 379 (D.N.J.1996); aff'd, 112 F.3d 131 (3d Cir.1997), we addressed the issue of a sua sponte declaration of a mistrial, when the judge was notified in the afternoon of the first day of testimony that his mother-in-law had passed away suddenly and unexpectedly. Neither counsel had the opportunity to object. Defendant was convicted at the retrial which began the next day with another judge.
We indicated there that "alternatives to a mistrial should have been considered on the record." Id. at 598, 660 A.2d 1246. Nevertheless, we are
[S]atisfied that the sua sponte declaration of a mistrial did not preclude a retrial. The mistrial was caused exclusively by the death of the judge's mother-in-law, and was in no way designed to help the prosecution or aid the State's cause or for any reason based upon the conduct of the trial or proceedings.

[Ibid.]
Moreover, we found that "the trial judge became incapacitated in the sense that he had to leave the court house and remain unavailable for some period of time due to the family tragedy." Id. at 599, 660 A.2d 1246. After our decision in that case, defendant sought a Writ of Habeas Corpus in the United States District Court for the *113 District of New Jersey. Love v. Morton, 944 F.Supp. 379 (D.N.J.1996).
The federal district court conducted an evidentiary hearing because no record had been created in the state court. The trial judge testified he did "not recall asking either counsel if they consented to a mistrial." Id. at 381 n. 3. The District Court granted Love's petition and the State appealed. The Third Circuit Court of Appeals held there was no manifest necessity for a mistrial, resulting in double jeopardy when Love was retried and convicted.
To demonstrate manifest necessity, the State must show that under the circumstances, the trial judge "had no alternative to the declaration of a mistrial." The trial judge must consider and exhaust all other possibilities. Love argues that the court failed to exhaust the possibilities of (1) excusing the jury overnight so the parties could explore the option of continuing the trial with the same jury and a different judge; and (2) continuing the trial with [another judge] and the same jury the next day, or as soon as [another judge] could familiarize herself with the trial transcript.
[Love v. Morton, 112 F.3d 131, 137 (1997) (citation omitted).]
In other words, the Third Circuit found that the emergency created for the trial judge by the sudden and unexpected death of his mother-in-law did not preclude the first trial from proceeding in an orderly fashion.
As a matter of law, declaring a mistrial in this case was not manifestly necessary when the decision to declare a mistrial vel non could have been postponed to the next morning. The delay would have given both the prosecutor and defense counsel, as well as the court, adequate time to consider alternative solutions to the sudden emergency. All judicial decisions should be based on calm deliberation. When it comes to decisions squarely implicating the serious consequences of the Double Jeopardy Clause, the necessity for collected and composed contemplation assumes a fortiori proportions. There was no legitimate reason for making the mistrial decision during a time of distraught distraction. The court could have easily rendered a decision the next morning through one of three judicial officers: The original trial judge, the presiding criminal court judge or the judge who presided at the second trial. At that time, the alternatives for aborting the trial or completing it with a new judge could have been properly considered.

[Ibid.]
In reviewing the case now before us, we are mindful of the balancing of interests and special deference afforded in circumstances where the mistrial resulted from the court's concern with the fair administration of justice rather than from misconduct by the prosecutor or defense counsel. Here, the trial judge declared the mistrial sua sponte, without input from either counsel and without exploring alternatives to a mistrial on the record. In fact, she had discharged the jury before counsel had an opportunity to appear and object. Upon being notified on November 9 that the mistrial was declared, defense counsel objected strenuously and attempted to create a record. Nevertheless, the judge declined to explore alternatives with counsel on November 9 or on November 13, when the trial prosecutor returned from vacation.
We are satisfied that in declaring the mistrial, the trial judge was motivated by concerns with the jury being able to consider the evidence fairly after the lengthy delay and after two jurors had just lost their parents. Nevertheless, there was no *114 particular urgency that necessitated the trial judge's sua sponte declaration of a mistrial before hearing the arguments of all counsel and examining alternatives to a mistrial. For example, when the prosecutor returned, the trial judge could have questioned the jurors to determine their comfort level with proceeding, and explained the availability of read-back testimony, before determining whether the time lapse was fatal to a fair trial.
We reject defendant's argument that the prosecutor was at fault because of her preplanned vacation. Apparently, everyone expected the trial to be concluded before November 1 when the family emergencies of two jurors arose. Both defense counsel were unprepared to move forward before November 9 because of other commitments. Nothing in the record indicates that the prosecutor sought the mistrial or would have gained any advantage in a retrial.
In Love v. Morton, the Third Circuit was unimpressed with the State's arguments that the trial judge properly rejected the alternative of excusing the jury for a period of time because the court was unable to tell the jurors how long the trial would be delayed. The Third Circuit held "[a]s a matter of law, declaring a mistrial... in this case was not manifestly necessary when the decision ... could have been postponed ..." at which time alternatives could have been explored. Id. at 137. The mistrial in Love occurred during the first day of testimony but the Third Circuit nevertheless found no exception to the double jeopardy clause. Here, the mistrial was declared after six days of trial and would require considerable expenditure of time and resources to retry.
While the Third Circuit decision in Love is not binding on us, the double jeopardy provisions of our state and federal constitutions are "coextensive in application," and we have consistently looked to the parallels between New Jersey and federal jurisprudence. Rechtschaffer, supra, 70 N.J. at 404, 360 A.2d 362.
We hold that the trial judge's sua sponte declaration of a mistrial under the circumstances of this case was improper and double jeopardy bars retrial.
We reverse and dismiss the indictment.
NOTES
[1] Defendant, Ashley Georges, filed this appeal and submitted briefs. Co-defendant, Gatsby Destin, neither filed an appeal nor appeared as a respondent in Georges' appeal. Because this was a joint trial, however, our decision includes him, as well. Gnapinsky v. Goldyn, 23 N.J. 243, 250, 128 A.2d 697 (1957).
[2] Defense counsel argues that he had no knowledge of the prosecutor's vacation plans until he appeared on November 9. Although the trial judge indicated in her opinion that all counsel were aware of the prosecutor's vacation plans, the prosecutor did not mention it on the record during the October 31 discussion about a date to continue the trial.