SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Fausto Camacho (A-30-13) (072525)**

**Argued May 6, 2014 -- Decided August 5, 2014**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

The issue in this appeal is whether the trial court's failure to provide a no-adverse-inference jury instruction is a trial error that is amenable to the harmless-error doctrine, or a structural error that constitutes per se reversible error.

On April 27, 2009, Derrick Blonski drove his blue Audi to a restaurant in Wallington. Before entering the restaurant, Blonski turned off the engine but left the key in the ignition. At that time, Emil Baez was making repairs to his vehicle in the same parking lot. Baez observed a light-colored Altima slowly pull into the parking lot. The driver of the Altima exited the vehicle, peered into the Audi and gave a thumbs-up signal to the passenger who remained in the Altima. According to Baez, the driver had a long beard and was wearing a white T-shirt. In contrast, Baez described the passenger of the Altima as bald or having short hair. Subsequently, Baez heard a car "peel out" of the parking lot and observed that both the Audi and Altima were gone. When Blonski saw that his vehicle was missing, he called 9-1-1 and reported the vehicle stolen.

Approximately one hour later, Fair Lawn police officer Luis Vasquez saw an Audi being driven in a very aggressive manner. Officer Vasquez pulled up next to the Audi and observed that the driver had a long beard and was wearing a white T-shirt. He turned on the patrol car's lights and siren. The Audi accelerated to 130 to 140 miles per hour, at which point Officer Vasquez abandoned the chase and radioed his location to the dispatcher. Subsequently, Detective Joshin Smith of the Clifton Police Department took up the pursuit. While seeking to avoid the pursuit, the driver of the Audi hit a curb, turned into a shopping center, struck a car, and stopped. The occupants of the vehicle ran out of the car. Detective Smith observed that the driver, later identified as defendant, had a heavy beard. Smith chased the defendant on foot, caught up to him, tackled him, and placed him under arrest.

On July 7, 2009, defendant was charged with third-degree theft, pursuant to N.J.S.A. 2C:20-3, and second-degree eluding by fleeing from a police officer, pursuant to N.J.S.A. 2C:29-2(b). At trial, Detective Smith and Officer Vasquez each identified defendant as the driver of the Audi in spite of the fact that at the time of trial, defendant no longer had a beard. Baez, on the other hand, was unable to identify defendant with certainty. Defendant did not testify or call any witnesses on his behalf at trial. As a result, the trial court asked defense counsel whether he was requesting a no-adverse-inference instruction, or Carter charge. Carter v. Kentucky, 450 U.S. 288 (1981). Defense counsel answered affirmatively, and defendant expressly agreed with counsel's statement. However, the trial court failed to include the charge when instructing the jury. Defendant did not object when the instructions were given.

The jury found defendant guilty of second-degree eluding, and acquitted him of third-degree theft by unlawful taking. Defendant moved for a judgment notwithstanding the verdict. The trial court denied the motion. At sentencing, defendant renewed his motion to set aside the verdict. The court again denied defendant's motion. On March 26, 2010, defendant was sentenced to a seven-year term of imprisonment.

On direct appeal, defendant argued that the trial court committed reversible error by failing to provide the jury with a Carter instruction. Defendant further contended that the trial court erred in denying his motion to set aside the verdict on the grounds that the verdict was against the weight of the evidence. In an unpublished opinion, the Appellate Division held that the trial court erred when, after defendant requested the no-adverse-inference charge, the court failed to instruct the jury that it could not draw an adverse inference from defendant's failure to testify. The panel concluded that the trial court's failure to provide a no-adverse-inference jury instruction after a defendant requests such an instruction is of such constitutional magnitude as to warrant automatic reversal and

1

remand for a new trial. The appellate panel did not consider defendant's argument regarding his motion to set aside the guilty verdict. The Supreme Court granted the State's petition for certification. 216 N.J. 14 (2013).

**HELD**: The trial court's failure to provide a no-adverse-inference jury instruction constitutes trial error, requiring a harmless-error analysis, and does not mandate automatic reversal. In this case, the error was harmless.

1. The no-adverse-inference jury instruction, or Carter charge, is grounded on the Fifth Amendment privilege against self-incrimination, applicable to the states through the Fourteenth Amendment. Although not specifically provided for in the State Constitution, "the privilege itself 'is firmly established as part of the common law of New Jersey and has been incorporated into our Rules of Evidence.'" State v. Hartley, 103 N.J. 252, 260 (1986). A defendant's ability to invoke the privilege at trial -- generally by opting not to testify -- reflects the well-established principle that the State is "constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against an accused out of his own mouth." Malloy v. Hogan, 378 U.S. 1, 8 (1964). (pp. 11-12)

2. The United States Supreme Court first addressed whether a jury charge violated a defendant's Fifth and Fourteenth Amendment rights against self-incrimination in a case where the trial court informed the jury that it was permitted to draw an unfavorable inference from the defendant's failure to testify. Griffin v. California, 380 U.S. 609 (1965). In Griffin, the Supreme Court set aside the defendant's conviction and held that the trial court's instruction to the jury that it may draw an adverse inference from the defendant's failure to testify was improper. In Carter, supra, the Supreme Court held that the failure of a court to instruct a jury that it may not draw any adverse inferences based on a defendant's failure to testify is of constitutional dimension. This Court has consistently mandated the trial court's use of the Carter instruction when it is requested by a defendant. (pp. 12-17)

3. The United States Supreme Court divides federal constitutional errors into two categories: 1) trial errors, and 2) structural errors. Arizona v. Fulminante, 499 U.S. 279 (1991). While it is well-established that the failure to provide a requested Carter instruction is an error of constitutional dimension, neither this Court nor the United States Supreme Court have addressed whether a trial court's failure to issue a requested Carter instruction constitutes trial error or structural error. A trial error is defined as an "error which occurred during the presentation of the case to the jury," and therefore may "be quantitatively assessed in the context of other evidence presented in order to determine whether it was harmless beyond a reasonable doubt." Id. at 307-08. A structural error, on the other hand, is a "structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards." Id. at 309-310. Such errors "are so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome." Neder v. United States, 527 U.S. 1, 7 (1999). (pp. 18-25)

4. A trial judge's failure to provide the Carter instruction, on request, is undoubtedly of constitutional dimension. However, the Court concludes that the failure to give a Carter instruction does not constitute a per se reversible error. It is a trial error that has an effect that may "be quantitatively assessed in the context of other evidence presented in order to determine whether it was harmless beyond a reasonable doubt." Fulminante, supra, 499 U.S. at 307-08. The Court finds, therefore, that the failure to give a Carter instruction is subject to the harmless-error analysis. (pp. 25-28)

5. The Court is satisfied that "in the context of other evidence," the court's inadvertent failure to give a Carter instruction was "harmless beyond a reasonable doubt"; the results of the trial would have been the same if the constitutional error had not been made. Fulminante, supra, 499 U.S. at 307-08. In light of the repeated statements to the jury concerning the State's burden and defendant's constitutional right not to testify, as well as the overwhelming evidence produced by the State, the trial court's omission of the Carter instruction did not affect the outcome of the trial or deprive defendant of a fair trial. Accordingly, the trial court's inadvertent omission of the Carter instruction was not "clearly capable of producing an unjust result" and was harmless. R. 2:10-2.

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the Appellate Division for consideration of defendant's motion to set aside the guilty verdict.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUDGE CUFF (temporarily assigned) did not participate.**

2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

FAUSTO CAMACHO, a/k/a SPARKS,

    Defendant-Respondent.

> Argued May 6, 2014 – Decided August 5, 2014
>
> On certification to the Superior Court, Appellate Division.
>
> Jenny M. Hsu, Deputy Attorney General, argued the cause for appellant (John J. Hoffman, Acting Attorney General of New Jersey, attorney).
>
> Susan Brody, Deputy Public Defender II, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    In this appeal, the State challenges the reversal of defendant, Fausto Camacho's, conviction for second-degree eluding, contrary to N.J.S.A. 2C:29-2(b).

    Defendant was charged with allegedly driving off with an Audi A4 automobile that had been left outside a restaurant in Wallington with the keys in the ignition. After the owner saw

that his vehicle was missing, he called 9-1-1 and reported the vehicle stolen. Approximately one hour later, a Fair Lawn police officer saw an Audi being driven in a very aggressive manner. The officer turned on the patrol car's lights and siren, and began to chase. But the Audi accelerated to 130 to 140 miles per hour and the chase was abandoned. Subsequently, a Clifton detective took up the pursuit. While seeking to avoid the pursuit, the driver of the Audi hit a curb, turned into a shopping center, struck a car, and stopped. The occupants of the vehicle ran out of the car. The detective chased and captured the driver, who is the defendant.

On July 7, 2009, defendant was charged with third-degree theft of an Audi A4 automobile, pursuant to N.J.S.A. 2C:20-3, and second-degree eluding by fleeing from a police officer, pursuant to N.J.S.A. 2C:29-2(b). At the end of the trial, the judge inadvertently failed to provide the jury with the no-adverse-inference charge that was requested by defendant and his counsel. Defense counsel did not object to the failure to provide the requested charge. A jury found defendant not guilty of third-degree theft, and guilty of second-degree eluding.

The Appellate Division held that the trial court erred when, after defendant requested the no-adverse-inference charge, the court failed to instruct the jury that it could not draw an adverse inference from defendant's failure to testify. The

4

panel concluded that the trial court's failure to provide a no-adverse-inference jury instruction after a defendant requests such an instruction is of such constitutional magnitude as to warrant automatic reversal and remand for a new trial.

The failure to provide the no-adverse-inference charge is of constitutional dimension. Carter v. Kentucky, 450 U.S. 288, 302-03, 101 S. Ct. 1112, 1120, 67 L. Ed. 2d 241, 252 (1981). Accordingly, this Court has mandated the trial court's use of the no-adverse-inference instruction when requested at trial. State v. Daniels, 182 N.J. 80 (2004).

We now address whether the failure to provide the charge is a per se error requiring automatic reversal, or whether the failure to provide the charge requires a harmless-error analysis; see State v. Adams, 194 N.J. 186 (2008) (citing R. 2:10-2). This determination requires an analysis of whether the failure to provide the charge is a trial error that is amenable to the harmless-error doctrine, or a structural error that constitutes per se reversible error.

We disagree. For reasons that follow, we conclude that when there is a failure to provide the no-adverse-inference charge, the error constitutes trial error and does not mandate automatic reversal. In this case, we find that the error was harmless. Accordingly, we reverse the judgment of the Appellate Division.

5

I.

On April 27, 2009, between 9:00 a.m. and 10:00 a.m., Derrick Blonski drove his blue Audi to a restaurant in Wallington. Before entering the restaurant to place a food order, Blonski turned off the engine but left the key in the ignition. At that time, Emil Baez was making repairs to his vehicle in the same parking lot. Baez observed a light-colored Altima slowly pull into the parking lot. The driver of the Altima exited the vehicle, peered into the Audi and gave a thumbs-up signal to the passenger who remained in the Altima. According to Baez, the driver had a long beard and was wearing a white T-shirt. In contrast, Baez described the passenger of the Altima as bald or having short hair. Subsequently, Baez heard a car "peel out" of the parking lot and observed that both the Audi and Altima were gone.

While waiting for his food order, Blonski stepped out of the restaurant to smoke a cigarette, noticed that his vehicle was missing, and called 9-1-1 to report it. Later that morning, at approximately 11:15 a.m., Fair Lawn Police Officer Luis Vasquez was driving his police vehicle on Route 21 when he observed a blue Audi "cutting off other vehicles [and] almost causing accidents." Officer Vasquez was accompanied in his patrol vehicle by Auxiliary Police Chief Nick Magiarelli.

6

Officer Vasquez pulled up next to the Audi and observed that the driver had a long beard and was wearing a white T-shirt.

The Audi accelerated, passing Officer Vasquez and nearly causing Officer Vasquez's vehicle to crash into a concrete divider. Officer Vasquez decided to attempt a motor vehicle stop and, therefore, turned on his lights and siren. Auxiliary Chief Magiarelli called police headquarters to report the Audi's license plate number and give a description of the vehicle. The Audi began to accelerate quickly to a speed of approximately 130 to 140 miles per hour. Officer Vasquez determined that it was too dangerous to continue the pursuit. Accordingly, he terminated it and radioed his location to the dispatcher.

Detective Joshin Smith of the Clifton Police Department received a radio communication advising officers to be on the lookout for the blue Audi. Approximately five minutes later, Detective Smith observed a vehicle matching the dispatcher's description on River Road and began to pursue it. While in pursuit, Detective Smith reported the sighting to the dispatcher and radioed in the license plate number of the vehicle. The dispatcher confirmed that the blue Audi was the suspect vehicle. At this time, the Audi began to accelerate rapidly. Detective Smith turned on his lights and siren to signal the driver to pull over. The driver of the Audi ignored the signal and quickly proceeded down an entrance ramp onto Route 3 where the

7

Audi's rear tire struck a curb. The vehicle's tire began to lose air pressure as a result of the impact. Nevertheless, the driver continued to drive erratically onto an area of the highway where several roads merged. The driver then went over a curb, slid down a grassy grade and into a shopping center parking lot, where the Audi struck a parked vehicle.

As the vehicle slowed, Detective Smith observed two individuals, one from the driver's seat and one from the front passenger's seat, open their respective doors, exit the vehicle, and begin to run. Detective Smith pursued the driver who later was identified as defendant. During the pursuit, Detective Smith observed that the driver had a heavy beard. Detective Smith also observed that "the passenger was taller than the defendant with a thin build, a low haircut and no beard." Smith chased the defendant on foot, caught up to him in a ravine behind the shopping center, tackled him, and placed him under arrest. Another officer brought defendant into police headquarters.

## A.

A Bergen County grand jury returned an indictment charging defendant with third-degree theft of a motor vehicle,

N.J.S.A. 2C:20-3, and second-degree eluding, N.J.S.A. 2C:29-2(b).[1]

At trial, Detective Smith and Officer Vasquez testified on behalf of the State. They each identified defendant as the driver of the Audi in spite of the fact that at the time of trial, defendant no longer had a beard. Baez, on the other hand, was unable to identify defendant with certainty. He maintained, however, that the person whom he witnessed exit the Altima and give the thumbs up had a beard.

Defendant did not testify or call any witnesses on his behalf at trial. As a result, the trial court asked defense counsel whether he was requesting a no-adverse-inference instruction, or Carter[2] charge, based on his client's decision not to testify at trial. Defense counsel answered affirmatively, and defendant expressly agreed with counsel's statement.[3]

However, the trial court failed to include the charge when instructing the jury. Defendant did not object when the instructions were given. After the trial judge completed his charge to the jury, he specifically asked the attorneys whether

---

[1] Initially, due to a clerical error, the second-degree eluding charge was mistakenly identified as a third-degree offense in the indictment.
[2] Carter v. Kentucky, 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981).
[3] The trial court also had defendant and his counsel sign a form reflecting their decision.

there were any exceptions to the charge.  Defense counsel replied, "No.  Thank you, Judge."

The jury found defendant guilty of second-degree eluding, and acquitted him of third-degree theft by unlawful taking.  Defendant moved for a judgment notwithstanding the verdict, arguing that the verdict was against the weight of the evidence because there had been an insufficient showing that Detective Smith properly identified defendant as the driver of the Audi during the chase.  The trial court denied the motion but allowed defendant to renew his application prior to sentencing.

At sentencing, defendant renewed his motion to set aside the verdict.  The court denied defendant's motion.  On March 26, 2010, defendant was sentenced to a seven-year term of imprisonment.

On direct appeal, defendant argued that the trial court committed reversible error by failing to provide the jury with a Carter instruction.  Defendant maintained that the failure to provide a Carter instruction should not be analyzed under the harmless-error rule because of its constitutional significance.  Defendant further contended that the trial court erred in denying his motion to set aside the verdict on the grounds that the verdict was against the weight of the evidence.

In an unpublished opinion, the Appellate Division reversed defendant's conviction and remanded for a new trial.  Its

10

decision was based on the trial court's failure to charge the jury that it could not draw an adverse inference from defendant's failure to testify, despite defendant's request for the charge.[4]  The appellate panel recognized "that although 'some constitutional errors may be harmless, . . . others are of such constitutional magnitude that they are always reversible error.'"  (quoting State v. Fusco, 93 N.J. 578, 587 (1983)).  It then concluded that "[t]he failure 'to instruct the jury that it may not draw an adverse inference from defendant's constitutional right to remain silent is such an error.'" (quoting State v. Haley, 295 N.J. Super. 471, 477 (App. Div. 1996)).

In reaching its decision, the Appellate Division rejected the State's reliance on State v. Oliver, 133 N.J. 141 (1993), as support for its argument that the defective jury charge was harmless.  The panel noted that although the Court in Oliver applied the harmless-error standard when the trial court refused to give the no-adverse-inference charge, it only did so "because the dissenting Appellate Division judge had determined that the error was harmless."  (citing Oliver, supra, 133 N.J. at 160). Nevertheless, the panel concluded that "[e]ven if we were to

_____

[4]The Appellate Division reversed and remanded based on defendant's Carter-related argument; it did not consider defendant's argument regarding his motion to set aside the guilty verdict.  It stated:  "As defendant will receive a new trial, we need not address his second argument."

11

evaluate this error under the harmless-error standard, we cannot say that the failure of the judge to give the charge was harmless-error."

We granted the State's petition for certification. State v. Camacho, 216 N.J. 14 (2013).

II.

The State argues that the Appellate Division improperly reversed defendant's conviction. In particular, the State contends that the Appellate Division erroneously created a rule of per se reversal for a trial court's inadvertent omission of the no-adverse-inference charge.

While the State concedes that the trial court was obligated to give the Carter instruction to the jury after defense counsel requested it, it maintains that a trial court's inadvertent omission of the no-adverse-inference charge cannot be considered structural error subject to automatic reversal. Rather, the error is a trial error that is subject to harmless-error analysis.

Defendant, on the other hand, argues that the Appellate Division correctly determined that the trial court committed reversible error by failing to include the Carter instruction in its jury charge. Defendant points to Haley, supra, and maintains that the Carter instruction is of such significant

12

constitutional dimension that a trial court's failure to give the instruction should always qualify as reversible error.

### III.

The no-adverse-inference jury instruction, or Carter charge, is grounded on the Fifth Amendment privilege against self-incrimination. The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. That provision, which is known as the privilege against self-incrimination, is applicable to the states through the Fourteenth Amendment. See Malloy v. Hogan, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492, 12 L. Ed. 2d 653, 658 (1964); State v. Knight, 183 N.J. 449, 461 (2005); State v. Hartley, 103 N.J. 252, 260 (1986). "Although we have no similar provision in our New Jersey Constitution, the privilege itself 'is firmly established as part of the common law of New Jersey and has been incorporated into our Rules of Evidence.'" Hartley, supra, 103 N.J. at 260 (quoting In re Martin, 90 N.J. 295, 331 (1982)); see also State v. Reed, 133 N.J. 237, 250 (1993) ("In New Jersey, the right against self-incrimination is founded on a common-law and statutory -- rather than a constitutional -- basis."); N.J.R.E. 501 to 503 (articulating the privilege against self-incrimination and its exceptions).

13

Ultimately, the privilege against self-incrimination protects "'the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own free will, and to suffer no penalty . . . for such silence.'" State v. P.Z., 152 N.J. 86, 100-02 (1997) (quoting Malloy, supra, 378 U.S. at 8, 84 S. Ct. at 1493, 12 L. Ed. 2d at 659). "A person invoking the privilege against self-incrimination may do so 'in any . . . proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him in future criminal proceedings.'" Ibid. (quoting Minnesota v. Murphy, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141, 79 L. Ed. 2d 409, 418 (1984)). A defendant's ability to invoke the privilege at trial -- generally by opting not to testify -- reflects the well-established principle that the State is "constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against an accused out of his own mouth." Malloy, supra, 378 U.S. at 8, 84 S. Ct. at 1493, 12 L. Ed. 2d at 659.

A.

The United States Supreme Court first addressed whether a jury charge violated a defendant's Fifth and Fourteenth Amendment rights against self-incrimination in a case where the trial court informed the jury that it was permitted to draw an unfavorable inference from the defendant's failure to testify.

14

<u>Griffin v. California</u>, 380 <u>U.S.</u> 609, 610, 85 <u>S. Ct.</u> 1229, 1230,

14 <u>L. Ed.</u> 2d 106, 107 (1965).  There, the trial court's jury

instruction explained that "a defendant has a constitutional

right not to testify," but nevertheless stated that

> [a]s to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among <u>the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable</u>.
>
> [<u>Ibid.</u> (emphasis added).]

The Supreme Court set aside the defendant's conviction and

held that the trial court's instruction to the jury that it may

draw an adverse inference from the defendant's failure to

testify was improper.  The Court observed that

> comment on the refusal to testify is a remnant of the inquisitorial system of criminal justice, . . . which the Fifth Amendment outlaws.  It is a penalty imposed by courts for exercising a constitutional privilege.  It cuts down on the privilege by making its assertion costly.  It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. . . .  What the jury may infer, given no help from the court, is one thing.  What it may infer when

15

the court solemnizes the silence of the accused into evidence against him is quite another.

[Id. at 614, 85 S. Ct. at 1232-33, 14 L. Ed. 2d at 109-10 (internal quotation marks and citations omitted).]

In a footnote, the Griffin Court explicitly stated that it would "reserve decision on whether an accused can require . . . that the jury be instructed that his silence must be disregarded." Id. at 615 n.6, 85 S. Ct. at 1233 n.6, 14 L. Ed. 2d at 110 n.6.

Subsequently, in Lakeside v. Oregon, 435 U.S. 333, 334, 98 S. Ct. 1091, 1092, 55 L. Ed. 2d 319, 321 (1978), the Court again addressed the Fifth Amendment right against self-incrimination in the context of jury instructions for a defendant who elected not to testify. In Lakeside, defense counsel objected to the trial court's issuance of a "no-adverse-inference" instruction based on his strategy to avoid "any mention of the fact that the defendant had not testified." Id. at 341, 98 S. Ct. at 1095, 55 L. Ed. 2d at 326. The defendant argued that "the instruction infringed upon [] his constitutional privilege not to be compelled to incriminate himself." Id. at 336, 98 S. Ct. at 1093, 55 L. Ed. 2d at 323. The Court rejected this argument, noting that "[b]y definition, 'a necessary element of compulsory self-incrimination is some kind of compulsion.'" Id. at 339, 98 S. Ct. at 1093, 55 L. Ed. 2d at 325 (quoting Hoffa v. United

16

States, 385 U.S. 293, 304, 87 S. Ct. 408, 414, 17 L. Ed. 2d 374, 383 (1966)).

The Lakeside Court concluded that the Fifth and Fourteenth Amendments bar a court from instructing a jury that they may draw an adverse inference, but that the rule was inapplicable to the reverse situation. Ibid. The Court emphasized that "a judge's instruction that the jury must draw no adverse inferences of any kind from the defendant's exercise of his privilege not to testify is 'comment' of an entirely different order." Ibid.

The Court stated that "[s]uch an instruction cannot provide the pressure on a defendant found impermissible in Griffin." Ibid. Rather, "its very purpose is to remove from the jury's deliberations any influence of unspoken adverse inferences. It would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect." Ibid. The Court also noted that the defendant's argument rested on two very doubtful assumptions:

> First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all.
>
> [Id. at 340, 98 S. Ct. at 1095, 55 L. Ed. 2d at 325-26.]

17

The Court concluded that "[f]ederal constitutional law cannot rest on speculative assumptions so dubious as these." Ibid. Notably, the Court explicitly declined to reach the issue of whether a trial court must provide a no-adverse-inference instruction to the jury when requested to do so by a defendant. Id. at 337, 98 S. Ct. at 1093, 55 L. Ed. 2d at 324.

This issue, however, was addressed fifteen years later in Carter, supra. In Carter, a trial court refused a defendant's request to instruct the jury that it may not draw an adverse inference from the defendant's election not to testify at trial. Id. at 290, 101 S. Ct. at 1114, 67 L. Ed. 2d at 244. The Court held that the failure of a court to instruct a jury that it may not draw any adverse inferences based on a defendant's failure to testify is of constitutional dimension. Id. at 305, 101 S. Ct. at 1122, 67 L. Ed. 2d at 254. Specifically, the Court stated that

> [t]he principles enunciated in our cases construing this privilege, against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a "no-adverse-inference" jury instruction when requested by a defendant to do so.
>
> [Id. at 300, 101 S. Ct. at 1119, 67 L. Ed. 2d at 251.]

18

Because "[j]urors are not experts in legal principles," the Court concluded that "to function effectively, and justly, they must be accurately instructed in the law."  Ibid.

> Such instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since "[too] many, even those who should be better advised, view this privilege as a shelter for wrongdoers.  They too readily assume that those who invoke it are . . . guilty of crime . . . ."
>
> [Ibid. (quoting Ullman v. United States, 350 U.S. 422, 426, 76 S. Ct. 497, 500, 100 L. Ed. 511, 518 (1956)).]

This Court has consistently mandated the trial court's use of the Carter instruction when it is requested by a defendant. In Daniels, supra, 182 N.J. at 90, the Court held that the "trial court, on request, must instruct the jury that it may draw no negative inferences from [a] defendant's silence" at trial.  Additionally, in State v. Brunson, 132 N.J. 377, 385 (1993), we held that although a defendant's "silence may suggest to the jury that the defendant has something to hide," this concern "may be tempered by the trial court's instruction to the jury that it should not draw an adverse inference from a defendant's silence."

IV.

While it is well-established that the failure to provide a requested Carter instruction is an error of constitutional

19

dimension, neither this Court nor the United States Supreme Court have addressed whether a trial court's failure to issue a requested Carter instruction constitutes trial error or structural error.  We must now determine whether the trial judge's inadvertent failure to provide the Carter instruction was harmless.

The United States Supreme Court in Chapman v. California, 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705, 709 (1967), noted that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."  However, the Court also recognized that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless-error."  Id. at 23, 87 S. Ct. at 827, 17 L. Ed. 2d at 710; see also Fusco, supra, 93 N.J. at 587.

The Court divides federal constitutional errors into two categories: 1) trial errors, and 2) structural errors.  Arizona v. Fulminante, 499 U.S. 279, 307, 309, 111 S. Ct. 1246, 1263, 1265, 113 L. Ed. 2d 302, 330, 331 (1991).

A.

A trial error is defined as an "error which occurred during the presentation of the case to the jury," and therefore may "be

20

quantitatively assessed in the context of other evidence presented in order to determine whether it was harmless beyond a reasonable doubt." Id. at 307-08, 111 S. Ct. at 1264, 113 L. Ed. 2d at 330; see also State v. Macon, 57 N.J. 325, 338 (1971) (describing the test as "whether in all the circumstances there was a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits").

The Supreme Court has emphasized that "most constitutional errors can be harmless," and are therefore not subject to automatic reversal. Fulminante, supra, 499 U.S. at 306, 111 S. Ct. at 1263, 113 L. Ed. 2d at 329; see also Hedgpeth v. Pulido, 555 U.S. 57, 61, 129 S. Ct. 530, 532, 172 L. Ed. 2d 388, 392 (2008) (stating that "'while there are some errors to which [harmless-error analysis] does not apply, they are the exception and not the rule'") (quoting Rose v. Clark, 478 U.S. 570, 578, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460, 470 (1986))). The Court further stressed that

> [i]n applying harmless-error analysis to these many different constitutional violations, the Court has been faithful to the belief that the harmless-error doctrine is essential to preserve the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

21

[_Fulminante_, _supra_, 499 _U.S._ at 308, 111 _S. Ct._ at 126, 113 _L. Ed._ 2d at 330 (internal quotation marks and citation omitted).]

The Court has addressed whether the harmless-error rule is applicable in the context of the Fifth Amendment. _Chapman_, _supra_, involved comments made by a prosecutor regarding a defendant's failure to testify at trial, which, at that time, was permitted by a state constitutional provision. 386 _U.S._ at 19, 87 _S. Ct._ at 825, 17 _L. Ed._ 2d at 707. The Court determined that the state provision violated the Constitution, and affirmatively rejected the application of a per se rule requiring automatic reversal. _Id._ at 20-22, 87 _S. Ct._ at 826-27, 17 _L. Ed._ 2d at 708-09. Accordingly, the Court applied a harmless-error analysis and concluded "it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions." _Id._ at 26, 87 _S. Ct._ at 829, 17 _L. Ed._ 2d at 711.

Similarly, in _United States v. Hasting_, 461 _U.S._ 499, 502-03, 103 _S. Ct._ 1974, 1977, 76 _L. Ed._ 2d 96, 102 (1983), the issue was whether a trial court erred in denying the defendants' motion for a mistrial after the prosecutor made impermissible comments in summation regarding the defendants' election not to testify at trial. The Court determined that the trial court's error in allowing the comments was harmless beyond a reasonable

22

doubt based on the record in its entirety and the overwhelming evidence of the defendants' guilt.  Id. at 512, 103 S. Ct. at 1982, 76 L. Ed. 2d at 108.  The Court, referring to its previous decision in Chapman, supra, stated that it had "recognized that, given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial . . . [T]he Constitution does not guarantee such a trial."  Id. at 508-09, 103 S. Ct. at 1981, 76 L. Ed. 2d at 106.

### B.

A structural error, on the other hand, is a "structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards."  Fulminante, supra, 499 U.S. at 309-10, 111 S. Ct. at 1265, 113 L. Ed. 2d at 331.  It "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself."  Id. at 310, 111 S. Ct. at 1265, 113 L. Ed. 2d at 331; see also State v. Purnell, 161 N.J. 44, 61 (1999) (recognizing that "a structural error affects the legitimacy of the entire trial, rather than an isolated error that occurs during a certain part of the trial process and does not contaminate the trial as a whole").

The United States Supreme Court has found structural error to exist "only in a very limited class of cases."  Johnson v.

23

_United States_, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718, 728 (1997). Such errors "are so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome." _Neder v. United States_, 527 U.S. 1, 7, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35, 46 (1999).

In _Chapman_, _supra_, the Court specifically noted three constitutional errors that could not be categorized as harmless and would thus call for automatic reversal of a conviction: (1) using a coerced confession against a defendant in a criminal trial; (2) depriving a defendant of counsel; and (3) trying a defendant before a biased judge. 386 U.S. at 42-43, 87 S. Ct. at 837, 17 L. Ed. 2d at 721.

Since the Court's decision in _Chapman_, other errors have been classified as structural errors, including "unlawful exclusion of members of the defendant's race from a grand jury, . . . [violation of] the right to self-representation at trial . . . and [violation of] the right to public trial." _Fulminante_, _supra_, 499 U.S. at 309-10, 111 S. Ct. at 1264-65, 113 L. Ed. 2d at 331 (internal citation omitted). Most recently, the Court in _United States v. Gonzalez-Lopez_, 548 U.S. 140, 148-49, 126 S. Ct. 2557, 2563-64, 165 L. Ed. 2d 409, 419-20 (2006), articulated additional structural defects, including "the denial of the right to trial by jury by the giving of a defective reasonable-

24

doubt instruction," and the right of a non-indigent defendant "to be assisted by counsel of one's choice."

V.

Importantly, the United States Supreme Court has not characterized the failure to provide a jury instruction as a structural defect. "Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379 (1988). In the context of jury instructions, the United States Supreme Court has acknowledged "that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically 'vitiat[e] all the jury's findings.'" Hedgpeth, supra, 555 U.S. at 60-61, 129 S. Ct. at 532, 172 L. Ed. 2d at 391-92 (quoting Neder, supra, 527 U.S. at 11, 119 S. Ct. at 1834, 144 L. Ed. 2d at 48).

With respect to a court's failure to instruct the jury on the presumption of innocence, the Court applied a harmful error standard in Kentucky v. Whorton, 441 U.S. 786, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979). In Whorton, defendant's counsel requested that the jury be instructed on the presumption of innocence. Id. at 787, 99 S. Ct. at 2089, 60 L. Ed. 2d at 642. The trial judge refused to give the instruction. Ibid. However, as noted by the Court, the trial judge gave an instruction "to the effect that the jury could return a verdict

25

of guilty only if they found beyond a reasonable doubt that the respondent had committed the acts charged in the indictment with the requisite criminal intent." Ibid.

Relying on its understanding of Taylor v. Kentucky, 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978), the Kentucky Supreme Court held that a presumption-of-innocence instruction was "constitutionally required in all criminal trials, and that the failure of a trial judge to give it cannot be harmless-error." Whorton, supra, 441 U.S. at 787, 99 S. Ct. at 2088, 60 L. Ed. 2d at 642 (citing Whorton v. Commonwealth, 570 S.W.2d 627 (Ky. 1978)).

The United States Supreme Court granted certiorari. Ibid. It recognized that in Taylor, it had reversed a criminal conviction that resulted from a trial in which the judge had refused to give a requested jury instruction on the presumption of innocence. Id. at 788-89, 99 S. Ct. at 2089-90, 60 L. Ed. 2d at 643. However, the Court emphasized that its decision was fact-specific and its "opinion focused on the failure to give the instruction as it related to the overall fairness of the trial considered in its entirety." Id. at 788, 99 S. Ct. at 2089, 60 L. Ed. 2d at 643.

The Whorton Court declared that "the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution." Id. at 789, 99 S.

26

Ct. at 290, 60 L. Ed. 2d at 643.  Rather, the prejudicial effect of the failure to give a requested instruction on the presumption of innocence

> must be evaluated in light of the totality of the circumstances -- including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors -- to determine whether the defendant received a constitutionally fair trial.
>
> [Ibid.; see State v. Marshall, 123 N.J. 1, 145 (1991), cert. denied, 507 U.S. 929, 113 S. Ct. 1306, 122 L.Ed. 2d 694 (1993).]

The Court ultimately reversed the judgment and remanded for a "determination of whether the failure to give such an instruction in the present case deprived the respondent of due process of law in light of the totality of the circumstances." Id. at 790, 99 S. Ct. at 2090, 60 L. Ed. 2d at 643-44.

VI.

A trial judge's failure to provide the Carter instruction, on request, is undoubtedly of constitutional dimension. However, with the aforementioned principles in mind, we agree with the State and conclude that the failure to give a Carter instruction does not constitute a per se reversible error.  It is a type of error that concerns the evidentiary value the jury may give to a defendant's election not to testify on his or her own behalf.  Therefore, it is a trial error that has an effect that may "be quantitatively assessed in the context of other

27

evidence presented in order to determine whether it was harmless beyond a reasonable doubt." Fulminante, supra, 499 U.S. at 307-08, 111 S. Ct. at 1264, 113 L. Ed. 2d at 330. Furthermore, a Carter instruction is not required in every criminal trial; it is merely available if a defendant so requests. Carter, supra, 450 U.S. at 305, 101 S. Ct. at 1122, 67 L. Ed. 2d at 254.

We find that the failure to give a Carter instruction is therefore subject to the Chapman harmless-error analysis.

A.

Here, the Appellate Division held the opposite, and concluded that the failure to provide the Carter instruction is a per se reversible error.

In reaching its decision, the panel interpreted this Court's opinion in Oliver, supra. In Oliver, supra, 133 N.J. at 149, the Court applied a harmless-error analysis when, contrary to defendant's request, the trial judge refused to provide the jury with a Carter instruction and told him it was "'too late.'" The Court heard the case as an appeal as of right based on a dissent in the Appellate Division decision. Id. at 145.

Although both the majority and the dissent agreed that the trial court erred in refusing defendant's request, their opinions differed on whether or not the error was harmless. Id. at 159-60. Contrary to the majority, the dissenting judge

28

considered the failure to instruct on defendant's decision not to testify to be harmless-error. Id. at 145, 160.

In its opinion, this Court explicitly stated that "[b]ecause both the majority and dissent agreed that the trial court's refusal to give the charge was error, the issue of the propriety of that refusal (as opposed to its harmfulness) is not before us on appeal." Id. at 160. Accordingly, the Court "confine[d] [its] consideration to the position of the dissenter below that the refusal amounted to harmless-error." Ibid. The Oliver Court then stated that "[g]iven the gravity of charges and the severity of the sentence exposure, we agree with the majority below that the error was not harmless." Ibid. (citing Carter, supra, 450 U.S. at 303, 101 S.Ct. at 1120, 67 L.Ed. 2d at 252).

The appellate panel in this case noted that the Oliver Court applied the harmless-error standard "only because the dissenting Appellate Division judge had determined that the error was harmless." We reject the Appellate Division's conclusion that this Court applied a legal standard merely because the Appellate Division decision it was reviewing applied that same standard.

Additionally, contrary to the panel's statement, the dissenter was not the only member of the appellate panel that reached the conclusion that the harmless-error rule applied to a

29

Carter violation. Both the majority and dissenting opinions agreed that the harmless-error rule was applicable. Oliver, supra, 133 N.J. at 159-60. The disagreement between the majority and dissent was limited to whether the Carter violation was actually harmless beyond a reasonable doubt based on the specific facts in the record. Ibid.

## B.

The Appellate Division also relied on Haley, supra, a case factually similar to this one. In Haley, although the pro se defendant requested the Carter charge, and the judge agreed to provide the instruction, the judge inadvertently omitted it. Haley, supra, 295 N.J. Super. at 475. Neither the defendant nor his standby counsel alerted the court to the missing charge. Id. at 477. The appellate panel concluded that the failure to provide a jury instruction on the defendant's election not to testify when requested by the defense was reversible error, despite the failure to object. Ibid. It stated that "the error in failing to instruct the jury that it may not draw an adverse inference from defendant's constitutional right to remain silent" is an error of "such constitutional magnitude that [it is] always reversible error." Ibid. (citations omitted).

Insofar as Haley stands for the proposition that all failures to provide the Carter instruction require reversal, we overturn Haley.

30

C.

In this case, because defendant did not object to the court's failure to instruct the jury on the requested charge, and even acquiesced to the failure, we consider this issue under the plain error rule. R. 2:10-2. Therefore, we may reverse only if the unchallenged error was "clearly capable of producing an unjust result." R. 2:10-2. In the context of jury instructions, plain error is "'[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Id. at 207 (quoting State v. Jordan, 147 N.J. 409, 422 (1997) (citations omitted)).

From our examination of the record, we find that the trial court's inadvertent failure to give a Carter instruction was harmless. We are satisfied that "in the context of other evidence," the error was "harmless beyond a reasonable doubt"; the results of the trial would have been the same if the constitutional error had not been made. Fulminante, supra, 499 U.S. at 307-08, 111 S. Ct. at 1264, 113 L. Ed. 2d at 330.

Here, despite the judge's failure to provide the Carter instruction, the record reveals that considering the trial in its entirety, the judge's omission did not deprive defendant of

31

a fair trial. Both the court's instructions and counsel's statements provided the jury with the functional equivalent of the Carter instruction. They explained the State's burden to the jurors and informed them that defendant had no obligation to testify. See State v. Burris, 145 N.J. 509, 531 (1996) (recognizing presumption that juries understand and abide by court instructions).

Moreover, the State presented overwhelming evidence that defendant was the driver of the blue Audi when it eluded police. Although at the time of trial defendant no longer had a beard, both Detective Smith and Officer Vasquez testified and identified defendant as the driver of the Audi. Most significantly, Detective Smith testified that he arrested defendant after observing him exit the driver's side door of the vehicle.

In light of the repeated statements to the jury concerning the State's burden and defendant's constitutional right not to testify, as well as the overwhelming evidence produced by the State, the trial court's omission of the Carter instruction did not affect the outcome of the trial or deprive defendant of a fair trial. Accordingly, the trial court's inadvertent omission of the Carter instruction was not "clearly capable of producing an unjust result" and was harmless. R. 2:10-2.

VII.

The judgment of the Appellate Division is reversed and the matter is remanded to that court for consideration of the remaining issue raised by defendant that the panel did not reach.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.  JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.    __A-30___                         SEPTEMBER TERM 2013

ON CERTIFICATION TO ____Appellate Division, Superior Court____


STATE OF NEW JERSEY,

     Plaintiff-Appellant,

        v.

FAUSTO CAMACHO, a/k/a SPARKS,

     Defendant-Respondent.


DECIDED _____August 5, 2014_____
          Chief Justice Rabner_____ PRESIDING
OPINION BY _____Justice Fernandez-Vina_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | -------------------- | -------------------- |
| TOTALS | 6 | |

1