# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3432-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.M.,

    Defendant-Appellant.

_____

        Submitted September 11, 2017 — Decided September 28, 2017

        Before Judges O'Connor and Vernoia.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 09-12-2137.

        Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel and on the briefs).

        Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant M.M.[1] appeals from his convictions for attempted sexual assault, sexual contact, child abuse and luring. He claims the court erred by failing to instruct the jury on identification and the assessment of statements attributed to him, and by permitting a police officer to testify concerning statements made by the victim. Having considered defendant's arguments under the applicable law, we affirm.

I.

Defendant was indicted for fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count one), second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(c)(1) (count two), fourth-degree child abuse, N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3 (count three), third-degree terroristic threats, N.J.S.A. 2C:12-3(b), and fourth-degree luring, N.J.S.A. 2C:13-6 (count five). Defendant chose not to appear at the jury trial on the charges.[2]

The trial evidence shows that seventeen-year-old S.D. and her three-year-old brother went to a local market and saw defendant standing outside. S.D. knew defendant because over a two-month period she frequently patronized a nearby "chicken store" defendant said he owned. Defendant had given S.D. free food at his

---

[1] We employ initials and pseudonyms to protect the privacy of the victim.

[2] Defendant's absence from the trial is not an issue on appeal.

store, offered her a part-time job, and gave her his telephone number, which she had saved in her cell phone.

After defendant and S.D. spoke briefly outside of the market, he offered to drive S.D. and her brother home. S.D. accepted the offer and she and her brother entered defendant's car. As defendant drove away from the market, he told S.D. that he needed to stop at his home. When they arrived at what S.D. understood was defendant's home, she and her brother accompanied defendant to the front door, where they were let into a basement apartment by another man.

S.D. and her brother initially sat in the apartment living room with the unidentified man, and defendant went into a bedroom. After a short time, defendant called S.D. into the bedroom. She entered the bedroom with her brother and they sat on a bed. Defendant also sat on the bed and began touching S.D.'s back and breasts, and told her he "wanted to make love" to her. The unidentified man entered the bedroom room, and defendant spoke to him in a language S.D. did not understand. The man then took S.D.'s brother into the living room.

Defendant put his legs and body on S.D. causing her to recline on the bed with defendant on top of her. He repeated that he wanted to make love to her, groped her breasts and put his tongue in her ear. S.D. screamed and yelled that she did not "want to do this"

and repeatedly said "no." Defendant pushed up S.D.'s shirt, touched her breasts and attempted to remove her pants.

S.D. said she was going to call the police, and defendant said he would kill her if she did so. He choked S.D., punched her face as she continued to yell and scream, and pushed her against a wall. The unidentified man knocked on the bedroom door and said people were outside of the apartment. S.D. was then able to flee the apartment with her brother.

S.D. cried and told two women and a man who stood outside the apartment that a man tried to rape her. They advised her to call the police, but S.D. left and returned home with her brother.

Upon returning home, S.D. spoke with her grandmother. They went to the police station where S.D. gave a statement about what occurred. The police subsequently brought S.D. to defendant's store, where she identified him and he was arrested. During trial, S.D. also identified a photograph of defendant.

The jury found defendant guilty of second-degree attempted sexual assault, third-degree luring, fourth-degree criminal sexual contact, and fourth-degree child abuse. Following merger, defendant was sentenced on the second-degree attempted sexual assault charge to a five-year custodial term subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2, and Megan's Law, N.J.S.A. 2C:7-1 to -3, and the special sentence of

parole supervision for life, N.J.S.A. 2C:43-6.4. He received a
concurrent three-year sentence on the third-degree luring charge.[3]
This appeal followed.

Defendant makes the following arguments:

POINT I

THE COURT'S FAILURE TO PROVIDE ANY
IDENTIFICATION INSTRUCTION REQUIRES THE
REVERSAL OF DEFENDANT'S CONVICTIONS. (Not
Raised Below).

POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL
AND DUE PROCESS OF LAW DUE TO THE ERRONEOUS
ADMISSION OF HEARSAY EVIDENCE. (Not Raised
Below).

POINT III

DEFENDANT WAS PREJUDICED BY THE TRIAL COURT'S
FAILURE TO CHARGE THE JURY REGARDING THE
PROPER ASSESSMENT OF STATEMENTS ALLEGEDLY MADE
BY HIM. (Not Raised Below).


II.

Defendant raises two challenges to the court's final jury
instructions. He first contends the court erred by failing to
provide an instruction on identification. Second, he argues the

---

[3] Defendant's sentence is also concurrent to a three-year custodial
term on a third-degree bail jumping, N.J.S.A. 2C:29-7, charge to
which he pled guilty under a separate indictment.

court failed to instruct the jury regarding statements he allegedly made to S.D.

Defendant's arguments concerning the jury instructions are raised for the first time on appeal. Where a defendant does not object to a jury charge but challenges the charge on appeal, we review for plain error and determine if the alleged error is "clearly capable of producing an unjust result." State v. Montalvo, 229 N.J. 300, 321 (2017) (quoting R. 2:10-2). Defendant must demonstrate "[l]egal impropriety in the charge prejudicially affecting [his] substantial rights . . . and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed the clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (citation omitted).

"[T]rial counsel's failure to request an instruction [generally] gives rise to a presumption that [counsel] did not view its absence as prejudicial to his client's case." State v. McGraw, 129 N.J. 68, 80 (1992) (alteration in original). We evaluate a claim of prejudice "'in light of the totality of the circumstances — including all the instructions to the jury, [and] the arguments of counsel.'" State v. Adams, 194 N.J. 186, 207 (2008) (alteration in original) (citation omitted). An "error in a jury instruction that is 'crucial to the jury's deliberations

on the guilt of a criminal defendant' is a '"poor candidate[] for rehabilitation" under the plain error theory.' Nevertheless, any alleged error also must be evaluated in light 'of the overall strength of the State's case.'" State v. Burns, 192 N.J. 312, 341 (2007) (citations omitted); accord State v. Walker, 203 N.J. 73, 90 (2010).  We apply these standards to defendant's two challenges to the court's jury instructions.

A.

The court's final jury instructions did not include a specific charge about S.D.'s in-court and out-of-court identifications of defendant.[4] Defendant did not request an instruction on the issue of identification and did not object to the court's failure to include the instruction in the final jury charge. Defendant argues, however, that the court's failure to provide the instruction violated his rights to due process and a fair trial and requires reversal of his convictions.

"[A]s a matter of general procedure a model identification charge should be given in every case in which identification is a legitimate issue." State v. Davis, 363 N.J. Super. 556, 561 (App. Div. 2003). "When identification is a 'key issue,' the trial court must instruct the jury on identification, even if a defendant does

---

[4] See generally Model Jury Charges (Criminal), "Identification; In-Court and Out-Of-Court Identifications" (2012).

7

not make that request." State v. Cotto, 182 N.J. 316, 325 (2005); accord State v. Green, 86 N.J. 281, 291 (1981). Identification is a key issue where "[i]t [is] the major, if not the sole, thrust of the defense . . . ." Green, supra, 86 N.J. at 291.

The circumstances here are vastly different from those in Green, where the Court deemed identification a key issue requiring a specific identification instruction. Ibid. In Green, the victim did not know the defendant, the crime was committed at night in the dark, the victim's description of the assailant conflicted with defendant's physical characteristics, there were no other witnesses to the crimes and the defendant challenged the identification at trial. Ibid.

Here, defendant was well-known to S.D. Over a two-month period, S.D. frequently saw and spoke with defendant at his store, and he offered her employment and gave her his telephone number, which she saved in her phone. S.D. immediately and consistently identified defendant as her assailant and there was no challenge to her identification at the trial.[5] To the contrary, in his

---

[5] Under the circumstances presented, we are not persuaded that the absence of other corroborating evidence and other witnesses supporting S.D.'s identification rendered identification a key issue at defendant's trial. Although the absence of evidence corroborating an identification may be a circumstance rendering identification a key issue in a trial, Green, supra, 86 N.J. at 291; State v. Frey, 194 N.J. Super. 326, 329 (App. Div. 1984),

summation defense counsel conceded defendant was "wrong to flirt with a young girl" and characterized the case as a "he said, she said" dispute between S.D. and defendant.

The record shows that identification was neither a contested nor key issue at trial. See Cotto, supra, 182 N.J. at 326 (finding identification was a key issue where defendant challenged the credibility of the State's witnesses and offered an alibi defense); Davis, supra, 363 N.J. Super. at 562 (finding identification instruction is required where the instruction addresses "the sole basis for [the] defendant's claim of innocence"). We are therefore convinced the trial court did not err by failing to give a specific identification charge in the absence of a request for it. Cotto, supra, 182 N.J. Super. at 325.

Moreover, we consider the court's failure to sua sponte give a specific identification instruction under the totality of the circumstances including the evidence presented, the arguments of counsel and the court's other instructions. Adams, supra, 194 N.J. at 207. Again, S.D.'s familiarity with defendant and her identification of defendant were not disputed issues at trial.

---

that is not the case here because defendant was known to S.D. and S.D.'s identification of defendant was not challenged at trial. We recognize an identification instruction is required even where a "defense's claim of misidentification, although thin, [is] not specious," Davis, supra, 363 N.J. Super. at 561, but here there was simply no claim of misidentification made during the trial.

A-3432-15T4

Instead, defendant's trial strategy was to challenge the thoroughness of the police investigation and the credibility of S.D.'s version of the events. Also, although the court did not give a specific identification instruction, it explained that the jury must find beyond a reasonable doubt that defendant committed the offenses in order to find him guilty. Based on all of the circumstances presented, we are not convinced that the failure to give a specific identification charge was clearly capable of producing an unjust result. R. 2:10-2; Camacho, supra, 218 N.J. at 554.

## B.

We next address defendant's argument that the court erred by failing to sua sponte instruct the jury concerning its evaluation of S.D.'s testimony about defendant's statements. More particularly, defendant claims the court erred by failing to instruct the jury regarding S.D.'s testimony that defendant said he wanted to "make love to" her. Defendant argues the charge was required under State v. Hampton, 61 N.J. 250 (1972) and State v. Kociolek, 23 N.J. 400 (1957). We find no merit in defendant's argument.

In Hampton, the Court directed that following a court's determination a defendant's statement is admissible under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966),

the jurors shall be instructed that "they should decide whether in view of all of the circumstances the defendant's confession is true," and "[i]f they find that it is not true, then they must treat it as inadmissible and disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence." Hampton, supra, 61 N.J. at 272.

Here, the court did not err by failing to give the Hampton instruction because it is required only "in a case where there has been a pretrial hearing involving the admissibility of the statement on the grounds of an alleged violation of the defendant's Miranda rights or involuntariness." State v. Baldwin, 296 N.J. Super. 391, 397 (App. Div. 1997). The trial court was not requested or required to determine the admissibility of defendant's statements about his desire to make love to S.D. and, therefore, the court did not err by failing to give a Hampton charge. Ibid.; see also N.J.R.E. 104(c) (codifying the Court's holding in Hampton); State v. Wilson, 335 N.J. Super. 359, 366-677 (1997) (finding there was no requirement to provide a Hampton charge because the statements at issue were volunteered to non-police witnesses), aff'd, 165 N.J. 657 (2000).

In Kociolek, the Court considered testimony describing statements attributed to the defendant. Kociolek, supra, 23 N.J. at 417-21. The Court observed there was "an inherent weakness" in

such testimony due to "faulty memory, [and] the danger of error in understanding and repetition," and explained that the "antidote" for the problems inherent in such testimony is "an instruction to the jury against trusting overmuch the accuracy of such testimony." Id. at 421. The Court has held that Kociolek "directs that the court must instruct the jury of the inherent weakness of oral statements." State v. Morton, 155 N.J. 383, 428 (1998), cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001).

To be sure, the court did not give a Kociolek charge to the jury here. That does not, however, end the inquiry. Although our Supreme Court has directed that a Kociolek charge be given whether or not specifically requested by a defendant, the failure to give this charge is not plain error per se. State v. Jordan, 147 N.J. 409, 428 (1997) (noting it would be "a rare case where failure to give a Kociolek charge alone is sufficient to constitute reversible error"). "Where such a charge has not been given, its absence must be viewed within the factual context of the case and the charge as a whole to determine whether its omission was capable of producing an unjust result." State v. Crumb, 307 N.J. Super. 204, 251 (App. Div. 1997) (finding "no reported case in which a failure to include a Kociolek charge has been regarded as plain error"), certif. denied, 153 N.J. 215 (1998).

S.D. was cross-examined concerning her version of the events and defendant's statements. The court carefully and thoroughly instructed the jurors about their evaluation of the credibility of witness testimony. Moreover, defendant's statements concerning his desire to make love to S.D. were not of great significance when considered in the context of her detailed testimony about defendant's actions. Accordingly, the court's failure to give a Kociolek instruction was not clearly capable of producing an unjust result. R. 2:10-2; see also State v. Feaster, 156 N.J. 1, 72-73 (1998) (finding no plain error in failing to give a Kociolek charge even though the defendant's incriminating oral statements were "at the heart of the State's case against defendant"), cert. denied, 532 U.S. 932, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001).

### III.

Defendant also argues he was deprived of his right to a fair trial by officer Alexa Pizzaro's testimony describing statements made by S.D. Pizzaro testified without objection that S.D. said she and her brother were walking home and met a man S.D. knew from a "chicken store," that the man was going to give her and her brother a ride home, that they stopped at a house, and that while at the house the man grabbed her breasts and tried kissing her. Defendant argues the testimony constituted inadmissible hearsay

13

and impermissibly bolstered S.D.'s credibility, and therefore deprived him of his right to a fair trial.

The State argues the testimony was not hearsay because it was not offered to prove the truth of S.D.'s statements. See N.J.R.E. 801(c) (defining hearsay evidence as a "statement, other than one made by the declarant while testifying a trial . . . , offered in evidence to prove the truth of the matter asserted"); see also State v. Long, 173 N.J. 138, 152 (2002) (finding the hearsay rule, N.J.R.E. 801(c), applies when testimony is offered to prove the truth of the statement attributed to the declarant). The State contends the testimony was not hearsay because it was introduced to show Pizzaro's state of mind and to explain why Pizzaro took certain actions. See, e.g., State v. Frisby, 174 N.J. 583, 592 (2002) (explaining there are circumstances permitting a police officer to testify, based generally on hearsay evidence, concerning the course of the officer's investigation).

We need not address the merits of the State's assertion because it is wholly unsupported by the evidentiary record. Pizzaro never testified that she took any action based on S.D.'s statements. Thus, there is no evidentiary support for the State's contention that Pizzaro's recounting of S.D.'s statements did not constitute inadmissible hearsay testimony. See N.J.R.E. 801(c) and N.J.R.E. 802.

14

We agree Pizzaro's testimony constituted impermissible hearsay, N.J.R.E. 802, and that it was error to admit the testimony at trial. However, "[b]ecause no objection was advanced with respect to that hearsay evidence at trial, it must be judged under the plain-error standard: that is, whether its admission 'is of such a nature as to have been clearly capable of producing an unjust result.'" Frisby, supra, 174 N.J. at 591 (2002) (quoting R. 2:10-2).

Based upon our review of the record, we are not persuaded Pizzaro's testimony was clearly capable of producing an unjust result. First, we can infer defendant did not perceive the testimony as prejudicial because there was no objection to it at trial. See State v. Nelson, 173 N.J. 417, 471 (2002) (finding that failure to object to testimony permits an inference that any error in admitting the testimony was not prejudicial); see also State v. Singleton, 211 N.J. 157, 182 (2012) (finding that a failure to object to a jury instruction permits a presumption the instruction "was unlikely to prejudice the defendant's case"). Pizzaro's testimony was brief and it was followed by S.D.'s detailed testimony concerning the circumstances surrounding the commission of the crimes. Moreover, S.D.'s version of the events was subject to detailed cross-examination during which her credibility was vigorously tested. We discern no basis to conclude that Pizzaro's

brief recitation of statements made by S.D. "possessed the clear capacity to bring about an unjust result." Camacho, supra, 218 N.J. at 554.

Defendant's remaining contentions are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION